

**WASHINGTON INJURY LAW**
JANELLE N. BAILEY
*WA Bar No.* 54586
*MO Bar No.* 64192
*GA Bar No.* 456672
*USPTO Bar No.* 68551
1905 Queen Anne Avenue North, Suite 300
Seattle, Washington 98109
Telephone: (206) 960-4522
Facsimile: (206) 960-4502
Email: Janelle@WashingtonInjuryLaw.com

**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
Jarrett L. Ellzey*
Texas Bar No. 24040864
jellzey@eksm.com
Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
1105 Milford Street
Houston, Texas 77006
Telephone: (888) 350-3931
Facsimile: (888) 276-3455

*Counsel will seek pro hac vice admission
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| ALAMAZE KING, EMIR GUR-RAVANTAB, MAY WOOD, LEONARD GRAY and EBONY BRUCE, Each Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation,<br><br>Defendant. | No. _____<br><br>**ORIGINAL CLASS ACTION COMPLAINT** |

1

### PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

2        Plaintiffs Alamaze King, Emir Gur-Ravantab, May Wood, Leonard Gray, and Ebony

3  Bruce, each individually and on behalf all others similarly situated, by their undersigned

4  attorneys, bring this Original Class Action Complaint (the "Complaint") against Amazon.com,

5  Inc. ("Amazon" or "Defendant") for violations of the Washington State Consumer Protection

6  Act (CPA), Wash. Rev. Code Ann. § 19.86, *et seq*. In support of their claims, Plaintiffs state as

7  follows:

8

## I.     INTRODUCTION

9        Amazon, the world's dominant online retailer, entices consumers to sign up for its Prime

10  membership service by promising speedy Two-Day, One-Day, and Same-Day package delivery.

11  And consumers who become Prime members pay handsomely for that promise of speedy delivery:

12  $139 per year or $14.99 per month. But for the past two-and-a-half years, Amazon has—and

13  secretly—stopped providing its fastest delivery service to Prime members who live in historically

14  underserved communities throughout the United States. Unbeknown to these consumers, Amazon

15  has collectively charged them millions of dollars for a service they do not receive.

16        In the middle of 2022, Amazon covertly decided to limit the ways it delivers packages to

17  all Prime members living in specific underserved zip codes throughout the U.S.—imposing what

18  Amazon itself calls a delivery "exclusion" in the entirety of those zip codes. For those zip codes,

19  rather than ensuring expedited delivery by using its own in-house, proprietary delivery systems,

20  Amazon began relying exclusively on third-party delivery services such as UPS and USPS.

21  Amazon's decision has led to a significant decrease in the speed and quality of Prime service

22  residents in these excluded zip codes have been receiving when compared to the speed and quality

23  of delivery that (1) they received prior to Amazon's self-styled exclusion, and (2) Prime members

24  receive in non-excluded zip codes not subject to Amazon's exclusion.

25        Amazon has never informed residents of the excluded zip codes of its decision to exclude

26  them from its proprietary delivery systems, nor has it told new customers living in those zip codes

of the delivery exclusion when they sign up for Prime. Instead, when some affected consumers have complained to Amazon that the delivery speeds they receive seem to be worse than surrounding areas, Amazon has concealed its delivery exclusion and deceptively implied that delivery delays were simply due to natural fluctuations in shipping circumstances, rather than an affirmative decision by Amazon.

The adverse impact of Amazon's secret exclusion on residents in the excluded zip codes has been striking. In 2023, even though the rest of the country's Prime members received their packages within two days of checkout 75% of the time nationwide, subscribers in the excluded zip codes, in the District of Columbia where Plaintiffs reside, received their packages within two days of checkout only 24% of the time. And while the rates of Two-Day delivery plummeted in the two affected zip codes in the District of Columbia where Plaintiffs reside, Amazon's delivery rate for Washington D.C. steadily improved.

Amazon's Prime members in the excluded zip codes represent almost half of the population in those zip codes. These Prime members in the District of Columbia where Plaintiffs reside have ordered more than 4.5 million Prime packages in the past four years. Yet because these Prime members usually have not received their packages within two days since mid-2022, when Amazon secretly imposed its exclusion, they are not getting the faster delivery times they are paying for.

The resulting harm of Amazon's secret exclusion on Prime members in the excluded zip codes is more pronounced than it would be on consumers elsewhere. Residents in the excluded zip codes in the District of Columbia where Plaintiffs reside live in areas that have fewer services and retail establishments nearby. Accordingly, these consumers turn to companies like Amazon to fill the gap to quickly deliver essential goods that they cannot easily find locally.

Amazon claims to have made this secret change in delivery options based on its concerns about driver safety in the excluded zip codes. Businesses operating in the U.S. have every right to take measures to protect their employees and contractors. But when those decisions materially diminish the quality of the goods and services that consumers are *paying* for—and that businesses

1  have *assured* consumers they will receive—businesses cannot implement those decisions in secret.

2  On the contrary, businesses have an obligation to be transparent about those decisions so that

3  consumers can make informed purchasing decisions and can have confidence that they receive the

4  full benefit of what they have paid for.

5       Amazon's lack of transparency means that residents of the excluded zip codes—both

6  existing and potential Prime consumers—are denied an opportunity to make informed decisions

7  about whether to sign up for or continue to pay for a Prime membership. In addition, were Amazon

8  upfront about its exclusion practice, Prime members in the excluded zip codes could explore other

9  options for meeting their basic needs. This is particularly important for consumers in historically

10  underserved areas of the country, who time and again receive poorer service based on where they

11  live.

12       For these reasons and those described below, Amazon has violated and continues to violate

13  the Washington CPA and consumer protection laws nationwide. Plaintiffs bring this Complaint on

14  behalf of themselves and the collective seeking restitution for consumers in the excluded zip codes,

15  civil penalties, and attorneys' fees.

16            **II.    SUBJECT MATTER JURISDICTION AND VENUE**

17       This Court has subject matter jurisdiction over this action under the Class Action

18  Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive

19  of interest and costs. The number of class members is unknown but presumed to include

20  Defendant's thousands of customers, many of whom have different citizenship from Defendant.

21  Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22       This Court also has subject matter jurisdiction over this action under 28 U.S.C.

23  § 1332(a)(1), as the named Plaintiffs and the Defendant are residents of different states, and the

24  amount in controversy exceeds $75,000.

25       This Court has personal jurisdiction over Defendant because it operates, and is

26  headquartered, in this District and conduct substantial business in this District.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Defendant is also based in this District and has caused harm to Plaintiffs and Class Members from and/or in this District.

### III.    PARTIES

#### a.  Plaintiffs

1.    Plaintiff Alamaze King is an individual and resident of Washington, DC, zip code 20020.

2.    Plaintiff Emir Gur-Ravantab is an individual and resident of Washington, DC, zip code 20020.

3.    Plaintiff May Wood is an individual and resident of Washington DC, zip code 20020.

4.    Plaintiff Leonard Gray is an individual and resident of Washington DC, zip code 20020.

5.    Plaintiff Ebony Bruce is an individual and resident of Washington DC, zip code 20020.

#### b.  Defendant

Defendant Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, WA 98109. Amazon markets, sells, and ships a wide variety of consumer goods and products through its websites and mobile application to consumers throughout the United States.

### IV.    FACTUAL ALLEGATIONS

#### a.    The Amazon Prime Business Model.

Amazon is an e-commerce conglomerate that markets, sells, and delivers consumer goods to customers throughout the country. Amazon offers consumers the ability to order a vast assortment of products from its mobile application or its website and have them delivered directly to the consumer.

Over the past two decades, Amazon has become the dominant online retailer for nearly anything a consumer could want, from basic household supplies to high-end consumer electronics.

Amazon's massive customer base is due, in large part, to its Prime membership service, which, from 2022 to present, has cost $14.99 per month or $139.00 per year. According to Bloomberg, 180 million Americans—more than 75% of American adults—are members of Prime, Amazon's paid subscription service.

Amazon advertises "fast, free delivery" on "millions of items" that are Prime-eligible on Amazon's website and mobile application. As described further below, Amazon heavily markets its Two-Day, One-Day, and Same-Day shipping options for Prime members—by far Prime's most well-known and well-advertised benefit. Accordingly, in addition to encouraging customers to spend money purchasing goods on its platform, Amazon's promises of "fast, free delivery" lead customers to pay for Prime membership.

Prime members have come to rely on Amazon's constant promises of "fast, free delivery"—and pay a substantial subscription fee for that promised, expedited delivery service.

*1.  Amazon's Marketing of Prime*

Amazon promotes its speedy delivery prominently and repeatedly in its advertising, which often refers simply to "Two-Day," "One-Day," and "Same-Day" delivery on Prime-eligible items, with no other qualifying language or disclosure.

For example, the 2022 ad shown below asserts merely that "One-Day Delivery" is "on prime" with no further disclosure.



One-Day Delivery. It's on prime

1
2
3
4
5
6

In another example from 2022, Amazon prominently advertises Two-Day shipping:



7
8
9
10
11
12
13
14

Finally, this 2021 ad promises that Amazon is "The Same-Day Store" for millions of items.



15      Amazon also reinforces the unqualified speed of delivery by omitting any mention of
16  decisions Amazon might make that would affect the speed of delivery.

17          *2.   Signing Up for Amazon Prime*

18      Throughout the sign-up process, Amazon highlights fast shipping as the hallmark
19  benefit of a Prime membership. When a person navigates to Amazon.com, the most prominent
20  link they are confronted with is a button inviting them to "Join Prime," as shown below:

21
22
23
24
25
26



Upon clicking that button to join Prime, a consumer is presented with Amazon touting "Fast, free deliver" as the primary benefit conferred by Prime, specifically highlighting that "millions of items" will take at most two days to arrive under "Same-Day, One-Day, and Two-Day Delivery," as displayed below:



Browsing this Prime signup page, a consumer is invited to learn more about Prime benefits through the "Prime Insider" page:



Clicking on this link, the first of the "Prime Membership Benefits" that Amazon lists is its "Delivery benefits." Here, the only delivery speed that mentions the potential of a geographic limitation is the third option listed, "FREE Same-Day Delivery," which is only available in "select areas." The "Two-Day" and "One-Day" options have no such qualification:



From there, a consumer may click on "FREE Two-Day Delivery" to learn more about their ability to enjoy that benefit as a Prime member. That link takes the consumer to a further explanation of Prime shipping speed benefits:

Here, Amazon asserts simply that "FREE Two-Day Delivery" is available for "[n]early all addresses in contiguous U.S." without any additional information. And again, as shown above, the only shipping category that allows a consumer to check their address to confirm whether it is eligible for shipping speed benefits is "FREE Same-Day Delivery," which allows the consumer signing up for Prime to check their zip code. Here, Amazon qualifies that Same-Day delivery may only be available in certain zip codes. But it does not make the same disclosure for Two-Day and One-Day delivery options, leaving the consumer with the impression that the availability of reliable Two-Day and One-Day delivery does not vary by that zip code.

Even without that Same-Day delivery disclosure, prior to paying for a Prime membership, Amazon does not disclose, during the sign-up process, any exclusion or limitation

on Same-Day shipping for Amazon account holders living in the excluded zip codes. Only after paying for Prime membership are they presented with a message that "Same-Day delivery is currently not available in your zip code:"



Even in its Prime membership terms and conditions, Amazon merely states, without any further explanation, that "Prime shipping benefits depend upon . . . in some cases the shipping address."

In all of Amazon's advertisements and throughout the sign-up process, Amazon highlights Two-Day, One-Day, and Same-Day delivery as the hallmark benefit of a Prime membership. But that benefit is not provided equally to all consumers in the United States, and Amazon does not disclose that fact to its customers.

### 3. Amazon Shipping Processes and Exclusions

When a product is ordered on Amazon, it is picked, packaged, and labeled at an Amazon warehouse, called a fulfillment center. Before the package is labeled for shipping by a carrier, Amazon uses algorithms to determine whether to deliver the package with its own Amazon Prime-branded, proprietary shipping infrastructure ("Amazon Delivery") or third-party parcel services such as the United Parcel Service ("UPS") or the United States Postal Service ("USPS") (collectively, "Third Party Delivery"). From the fulfillment center, a package goes to an Amazon "sortation center," where packages are sorted by destination zip code and carrier. From there, the

package is transported to an Amazon delivery station or a Third-Party facility, such as a U.S. Post Office, for the "last mile" delivery to the customer's home or other shipping address. If a package goes to an Amazon delivery station, the package is loaded directly onto an Amazon Prime-branded truck run by Amazon Delivery. If the package goes to a Post Office or UPS facility, those Third-Party carriers will further sort and process the package for last-mile delivery.

This process is designed to ensure that—through all of Amazon's various delivery channels, including Amazon Delivery, the USPS, and UPS—consumers receive the fastest shipping possible on the items they purchase.

Use of Amazon delivery stations and Amazon Delivery for the last-mile delivery often results in much faster delivery times than when the last mile is executed with UPS or USPS. Amazon has always been aware that the flexibility to use any of its delivery options—whether Amazon Delivery or Third-Party Delivery—leads to the fastest delivery times and best customer experience. Amazon knows that when it only delivers packages via Third Party Delivery, packages often arrive to consumers slower than those delivered via its in-house Amazon Delivery.

Amazon does not always offer Amazon Delivery to all shipping addresses. According to Amazon's undisclosed internal policies, when Amazon Delivery drivers are presented with an incident of "violence, intimidation, or harassment," Amazon may choose to limit or suspend Amazon Delivery to a single address, block, community, or an entire zip code to protect Amazon drivers from experiencing further harassment. Among the most severe suspensions Amazon can impose is an "exclusion." Under an exclusion, Amazon will "suspend" use of Amazon Delivery and only use USPS and UPS for last-mile delivery in the excluded area.

According to Amazon's internal policies, once a delivery exclusion is implemented, it should be re-evaluated every six months. In practice, however, once an exclusion is in place, it can persist indefinitely unless affirmatively lifted by Amazon.

These internal policies, and the consequences of their application, are not disclosed to consumers. Indeed, Amazon has never publicly acknowledged that entire zip codes may be

excluded and thus relegated to slower delivery speeds.

Because Amazon omits material information about what delivery areas are currently excluded and when or why Amazon elects to exclude entire zip codes from its Amazon Delivery, a reasonable consumer in the District would expect—and indeed, has no reason to doubt—that they will be able to take advantage of Amazon's heavily touted promise of Two-Day and One-Day delivery when they sign up for a Prime membership, and when they continue to pay for a Prime membership, no matter where they live in country.

**b. Amazon Surreptitiously Imposed Prime Shipping Exclusions on Certain Zip Codes.**

In delivering packages to Prime members across the country, Amazon's service has gotten closer to its promised goal of Two-Day delivery in recent years. In 2021, Amazon delivered packages to Prime members across the U.S. within two days of checkout 66% of the time. In 2022 that rate increased to 69%, and in 2023 it was even higher, delivering packages to Prime members within two days of checkout 75% of the time.

After June 2022, however, the same was no longer true for Prime members who lived in excluded zip codes.

In June 2022, Amazon instituted delivery exclusions for the entirety of zip codes 20019 and 20020, which includes Plaintiffs King and Gur-Ravantab's addresses. These exclusions remain in place today. This means that Amazon Delivery has not been used in those zip codes, and last-mile delivery for all Prime packages ordered to those zip codes has been executed via Third Party Delivery services UPS and USPS. Consistent with the Amazon policy discussed above, these exclusions have never been shared with consumers in these zip codes or with the public at large.

The effect of these exclusions on consumers in zip codes 20019 and 20020 is devastating. Due to Amazon's exclusion, the number and rate of packages that arrived in those zip codes within Amazon's promised two days has plummeted compared to the U.S. as a whole, as reflected in the table and graph below:

| Year | District-Wide | | 20019 | | 20020 | |
|------|---------------|---|-------|---|-------|---|
| | Delivered withing 2 days of checkout | Volume | Delivered withing 2 days of checkout | Volume | Delivered withing 2 days of checkout | Volume |
| 2020 | 56.13% | 6,976,347 | 60.31% | 643,817 | 58.94% | 548,631 |
| 2021 | 66.66% | 9,150,897 | 73.17% | 1,027,852 | 72.30% | 883,614 |
| | | | **Exclusions instituted June 2022** | | | |
| 2022 | 68.63% | 10,228,053 | 47.65% | 565,234 | 47.94% | 485,577 |
| 2023 | 74.33% | 8,688,261 | 25.11% | 219,702 | 23.64% | 169,951 |



As shown in the above figures, in 2021, before Amazon excluded these two zip codes, it delivered packages to addresses in zip codes 20019 and 20020 within two days of the customer placing the order approximately 73% of the time. Indeed, in 2021, Amazon's Two-Day fulfillment rate in those two zip codes was even higher than the rate for the District as a whole, which was 66%.

But after Amazon excluded these two zip codes, Prime delivery times to 20019 and 20020 plummeted. In 2022—when the exclusion was only in place for approximately *half* of the year— the rates of packages delivered within two days to zip codes 20019 and 20020 fell to 48%. In 2023—

the first full year in which the exclusions were in place for the *entire* year—the rates of Two-Day delivery on Prime packages dropped even further, to 24.5%. Despite these precipitous declines in delivery speed in these two zip codes, Amazon's delivery speed for the District of Columbia as a while *increased* to nearly 75%.

Amazon delivered a large volume of Prime packages to 20019 and 20020 both before and after the exclusions were put in place: more than 4.5 million since 2020. This drop in delivery speed across such a huge number of packages reflects not simple fluctuations in the delivery of a few packages but a widespread and systematic reduction in the level of delivery service provided by Amazon to its Prime members living in zip codes 20019 and 20020. This is further evidenced by the fact that Two-Day delivery rates everywhere else in the DC area have continued to improve, so much so that the overall Two-Day delivery rate for the DC area as a whole has improved despite the significant drop in service to zip codes 20019 and 20020.

Zip codes 20019 and 20020 comprise two-thirds of the District east of the Anacostia River, historically the most underserved part of the District:



In 2020, the adult population of 20019 was 46,628 and the adult population of 20020 was 38,840. Of that combined population, more than half have been Prime members: in 2022, zip codes 20019 and 20020 were home to 48,693 unique Prime members; in 2023 there were 48,217, and in 2024 there are approximately 36,726.

The drop in Two-Day fulfillment to 20019 and 20020 as a result of Amazon's undisclosed exclusion means that these nearly 50,000 Prime members consistently experience the slowest shipping speeds in the DC area, despite paying the same premium for Prime membership that all other DC residents pay.

In information and belief, from the District of Columbia serves as a mere example of equally disparate treatment of excluded zip codes across the United States.

Amazon has never paused or lifted its delivery exclusions in the excluded zip codes since they were implemented in June 2022.

Because of Amazon's delivery exclusions, Prime members in excluded zip codes, more often than not, do not receive one of the main benefits Amazon has led them to pay for: Two-Day delivery.

**c.    Amazon's Statements and Omissions Have Materially Misled Consumers.**

Amazon knows that delivery speed is material to consumers, which is why it so heavily advertises fast shipping. Amazon's CEO of worldwide Amazon Stores admits: "One thing we've learned about customers over the years is the importance they place on delivery speed. The faster we can get products to customers, the more likely they are to buy them."

Knowing this, Amazon has materially misled consumers in excluded zip codes about its Prime shipping speeds in numerous respects.

*First*, after Amazon implemented the exclusions, its advertising has deceived the existing Prime members in excluded zip codes about the speed with which it delivers packages. Amazon's advertising to the public at large, and its messaging to consumers signing up for Prime, inundate consumers with advertisements touting Two-Day and faster shipping speeds on Prime-tagged

goods. Based on these advertisements, reasonable consumers across the U.S. who have signed up for Prime memberships, including those in excluded zip codes, expect that they will regularly receive Prime-eligible goods ordered from Amazon within two days of checkout. But those advertisements were and continue to be misleading to Prime members in excluded zip codes because of Amazon's clandestine implementation of delivery exclusions, which have resulted in Prime members in excluded zip codes receiving their Amazon Prime purchases within the promised two-day window a paltry 24% of the time.

*Second*, by failing to disclose to the existing Prime members in excluded zip codes that their addresses were and are being excluded from delivery by Amazon Delivery and that they thus would and do receive slower delivery speeds, Amazon has deceived these consumers. Specifically, Amazon has failed to disclose that it has (1) instituted and maintained a delivery exclusion; and (2) severely curtailed the delivery times that Prime members in the excluded areas rely on and expect and that the rest of the country continues to enjoy. Amazon thus has omitted facts material to those consumers' decisions to continue paying for their Prime memberships.

*Third*, by failing to notify potential new Prime members who live in excluded zip codes before they sign up for and pay for Prime that their addresses are excluded from Amazon Delivery service, Amazon similarly omits the material fact that these consumers will receive slower shipping speeds than neighboring zip codes, despite paying the same Prime membership fees, and that they will only occasionally receive Two-Day delivery.

*Fourth*, even when consumers in excluded zip codes have complained directly to Amazon about their slow delivery speeds, Amazon has doubled down on its deception by refusing to disclose the fact of the delivery exclusion, and instead has deceptively implied that slower speeds are simply due to other circumstances, rather than an affirmative decision by Amazon

For example, one customer in 20020 complained directly to Amazon on Twitter:



2.    In response to this complaint, Amazon falsely stated that the disparity was "never on purpose."



Amazon has repeated similar falsehoods on other platforms, including the customer help chat platforms on its website, for example:

**Ashish has joined & will be ready to chat in just a minute.**

Ashish | Customer Service
Thank you for contacting Amazon. I am Ashish. How may I help you today ? :)

5:06 PM
hello,, why are my prime deliveries taking up to 7 days for delivery when I use 20020 for the address. when I use 21403 delivery is 2 days.
5:07 PM
Ashish | Customer Service
The delivery date varies from zip code to zip code as the items are shipped from different Amazon storehouses.

5:08 PM
so prime is a waste of money in my zipcode 20020?
5:09 PM
Ashish | Customer Service
Maybe the shipment was delayed in the earlier cases. Was the shipping time not mentioned in the orders ?

5:10 PM
yes. that's my confusion with paying for prime when I have to wait more than 2-3 days.
5:11 PM
Ashish | Customer Service
can you trying deleting and readding that address in your account. That might help.

Amazon's deceptive practices have a significant impact on and come at a high cost to consumers in excluded zip codes. When a new Prime member signs up, they are committing $14.99 per month or $139 per year for the service. After committing that amount of money, consumers often rely on Prime for the delivery of many basic necessities, like household items, groceries, and childcare products. This is particularly true for consumers in 20019, which has a median household income of $53,394 and which only has one full-service grocery store, and 20020, which has a median household income of $48,106 and which only has three full-service grocery stores. But these are the very consumers that Amazon has chosen to deceive through the above series of misrepresentations and omissions, which have denied them both the full benefit of the Prime membership they have paid for and the opportunity to make informed decisions about whether and how to use Prime services.

    **d.**    **Plaintiffs' Experiences.**

Plaintiffs King, Gur-Ravoutab, Wood, Gray, and Bruce had nearly identical experiences with Defendant and its delays due to its unilateral decision to exclude their zip code from its direct delivery routes.

1    Plaintiff King is and has been and Amazon Prime member for multiple years.  Plaintiff

2    King resides within zip code 20020.  Zip code 20020 is on Amazon's list of excluded zip codes.

3    Because of this, Plaintiff King has experienced delays in deliver of his purchased produces that

4    exceed Amazon's promised two-day delivery deadline.  Plaintiff King has purchased over the

5    last two years hundreds of dollars' worth of good that Amazon failed to deliver in a timely

6    manner.  At all times during the relevant period, Plaintiff King paid his monthly fee to Amazon

7    Prime and kept his account in good standing.

8    Plaintiff Gur-Ravaoutab is and has been and Amazon Prime member for multiple years.

9    Plaintiff Gur-Ravaoutab resides within zip code 20020.  Zip code 20020 is on Amazon's list of

10   excluded zip codes.  Because of this, Plaintiff Gur-Ravaoutab has experienced delays in deliver

11   of his purchased produces that exceed Amazon's promised two-day delivery deadline.  Plaintiff

12   Gur-Ravaoutab has purchased over the last two years hundreds of dollars' worth of good that

13   Amazon failed to deliver in a timely manner.  At all times during the relevant period, Plaintiff

14   Gur-Ravaoutab paid his monthly fee to Amazon Prime and kept his account in good standing.

15   Plaintiff Wood is and has been and Amazon Prime member for multiple years.  Plaintiff

16   Wood resides within zip code 20020.  Zip code 20020 is on Amazon's list of excluded zip

17   codes.  Because of this, Plaintiff Wood has experienced delays in deliver of his purchased

18   produces that exceed Amazon's promised two-day delivery deadline.  Plaintiff Wood has

19   purchased over the last two years hundreds of dollars' worth of good that Amazon failed to

20   deliver in a timely manner.  At all times during the relevant period, Plaintiff Wood paid his

21   monthly fee to Amazon Prime and kept his account in good standing.

22   Plaintiff Gray is and has been and Amazon Prime member for multiple years.  Plaintiff

23   Gray resides within zip code 20020.  Zip code 20020 is on Amazon's list of excluded zip codes.

24   Because of this, Plaintiff Gray has experienced delays in deliver of his purchased produces that

25   exceed Amazon's promised two-day delivery deadline.  Plaintiff Gray has purchased over the

26   last two years hundreds of dollars' worth of good that Amazon failed to deliver in a timely

1    manner.  At all times during the relevant period, Plaintiff Wood paid his monthly fee to Amazon

2    Prime and kept his account in good standing.

3    Plaintiff Bruce is and has been and Amazon Prime member for multiple years.  Plaintiff

4    Bruce resides within zip code 20020.  Zip code 20020 is on Amazon's list of excluded zip

5    codes.  Because of this, Plaintiff Bruce has experienced delays in deliver of his purchased

6    produces that exceed Amazon's promised two-day delivery deadline.  Plaintiff Bruce has

7    purchased over the last two years hundreds of dollars' worth of good that Amazon failed to

8    deliver in a timely manner.  At all times during the relevant period, Plaintiff Bruce paid his

9    monthly fee to Amazon Prime and kept his account in good standing.

10                              **V.    CLASS ACTION ALLEGATIONS**

11    Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of

12    others similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of

13    Civil Procedure.

14    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

15               **All persons residing in excluded zip codes who paid for an Amazon**

16               **Prime membership (the "Class").**

17    Excluded from the Classes are the following individuals and/or entities: Defendant and

18    Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

19    Defendant has a controlling interest; all individuals who make a timely election to be excluded

20    from this proceeding using the correct protocol for opting out; all federal, state, or local

21    governments, including, but not limited to, their departments, agencies, divisions, bureaus,

22    boards, sections, groups, counsels, and/or subdivisions; and all judges assigned to hear any

23    aspect of this litigation, as well as their immediate family members.

24    Plaintiffs reserve the right to modify or amend the definition of the proposed classes

25    before the Court determines whether certification is appropriate.

26    <u>Numerosity,</u> Fed R. Civ. P. 23(a)(l): Class Members are so Many that joinder of all

members is impracticable. Upon information and belief, there exceed 10,000 individuals who purchased an Amazon Prime membership and reside in an excluded zip code, and each Class is apparently identifiable within Defendant's records.

Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.  Whether and to what extent Defendant had a duty to disclose the lack of Two-Day shipping services to excluded zip codes;

    b.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to properly disclose their lack of services to excluded zip codes;

    c.  Whether Defendant violated the consumer protection statutes invoked herein;

    d.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages because of Defendant's wrongful conduct;

    e.  Whether Plaintiff and Class Members are entitled to restitution because of Defendant's wrongful conduct; and

    f.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of Defendant's actions.

Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all reside in excluded zip codes and paid for Amazon services that Amazon did not disclose they would not receive.

Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged here apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's

1    conduct toward the Class as a whole, not on facts or law applicable only to Plaintiff.

2        Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and

3    protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of

4    interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek

5    no relief that is antagonistic or adverse to the Members of the Class and the infringement of the

6    rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs

7    have also retained counsel experienced in complex class action litigation, and Plaintiffs intend

8    to prosecute this action vigorously.

9        Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an

10    appropriate method for fair and efficient adjudication of the claims involved. Class action

11    treatment is superior to all other available methods for the fair and efficient adjudication of the

12    controversy alleged here; it will permit many Class Members to prosecute their common claims

13    in a single forum simultaneously, efficiently, and without the unnecessary duplication of

14    evidence, effort, and expense that hundreds of individual actions would require. Class action

15    treatment will permit the adjudication of modest claims by certain Class Members, who could

16    not individually afford to litigate a complex claim against large corporations, like Defendant.

17    Further, even for those Class Members who could afford to litigate such a claim, it would still

18    be economically impractical and impose a burden on the courts.

19        The nature of this action and the nature of laws available to Plaintiffs and Class

20    Members make the use of the class action device a particularly efficient and appropriate

21    procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because

22    Defendant would necessarily gain an unconscionable advantage since it would be able to exploit

23    and overwhelm the limited resources of each individual Class Member with superior financial

24    and legal resources; the costs of individual suits could unreasonably consume the amounts that

25    would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is

26    representative of that experienced by the Class and will establish the right of each Class

Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

Unless a Class-wide injunction is issued, Defendant may continue in its failure to disclose that many of its advertised services are unavailable to those in excluded zip codes, and Defendant may continue to act unlawfully as set forth in this Complaint.

And Defendant has acted or refused to act on grounds generally applicable to the Class and thus final injunctive or corresponding declaratory relief for the Class Members is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Likewise, issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiffs and Class Members to disclose the true nature of the services it offered to excluded zip codes;

b. Whether Defendant breached a legal duty to Plaintiffs and Class Members to disclose the true nature of the services it offered to excluded zip codes prior to Plaintiffs and the Class Members' purchase of an Amazon Prime membership;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to false advertising;

d. Whether Defendant adequately and accurately informed Plaintiff and Class

Members that they would not receive the full benefit of Amazon Prime membership;

e.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to disclose the true nature of its services to excluded zip codes; and

f.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief because of Defendant's wrongful conduct.

## VI.    CAUSE OF ACTION

**A.    COUNT ONE: VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**

Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

1.      The Washington CPA prohibits unfair or deceptive trade practices in the conduct of any trade or commerce. "Trade" includes the sale of assets, and "assets" include any personal property of value. Wash. Rev. Code Ann. § 19.86.010.

2.      The Washington CPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in Washington.

3.      Defendant participated in this deceptive practice as a means of inducing consumers to purchase and Amazon Prime membership to further Defendant's business purpose of shipping household and consumer goods to customers across the country. Accordingly, Defendant's deceptive trade practice was performed in the course of trade or commerce.

4.      By engaging in the acts and practices alleged in this Complaint, Defendant has engaged and continues to engage in acts or practices that have a tendency to mislead consumers. As alleged fully herein, these acts or practices include the following:

a.  Misrepresenting to consumers through advertising the delivery speed with which Prime members with primary delivery addresses in excluded zip codes would

receive packages (i.e. within two days, one day, or on the same day), in violation of the Washington CPA, Wash. Rev. Code Ann. § 19.86.020;

b.  Misrepresenting to consumers and/or using ambiguity with respect to material facts through the use of consumer help accounts, chat platforms, and other avenues that slower delivery times to excluded zip codes are one-time occurrences and based on factors other than Amazon's imposition of a uniform, ongoing delivery exclusion to those zip codes, in violation of the Washington CPA, Wash. Rev. Code Ann. § 19.86.020;

c.  Failing to disclose material facts regarding the application of Amazon's delivery exclusion to existing Prime members with primary delivery addresses in excluded zip codes, including the fact that when Amazon put the zip code exclusions in place, the rate at which it would meet its delivery speed promises would fall drastically, the omission of which tended to mislead consumers, in violation of the Washington CPA, Wash. Rev. Code Ann. § 19.86.020; and

d.  Failing to disclose material facts regarding the application of Amazon's delivery exclusion, including the impact on advertised shipping speeds, to potential new Prime members with primary delivery addresses in excluded zip codes, the omission of which tended to mislead consumers, in violation of the Washington CPA, Wash. Rev. Code Ann. § 19.86.020.

5.  Each deceptive act or practice engaged in by Defendant as alleged above constitutes a separate violation of the Washington CPA.

6.  As residents of the excluded zip codes, Plaintiffs and Class Members were injured by Defendant's deceptive trade practice. Plaintiffs and Class Members paid for Amazon Prime benefits and services that they did not receive and were not told by Amazon that they would not receive.

7.  Defendant's unlawful acts and practices in violation of the Washington CPA target

and adversely affect consumers across the country.

8.      Defendant's deceptive trade practice affected millions of consumers across the country. By excluding certain zip codes from the full benefit of Prime membership without informing the residents of those zip codes that they would not receive the benefits they were paying for, Defendant participated in a deceptive trade practice affecting the public interest of Amazon Prime subscribers across the country.

9.      Accordingly, Defendant's violations present a continuing harm that adversely affects the public interest.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members pray for judgment against Defendants, awarding relief as follows:

a.      Finding a class action is the most efficient and effective way to resolve the claims against Defendant;

b.      Issue a permanent injunction that prohibits Amazon from engaging in unfair or deceptive practices and from making misleading statements or omissions related to its marketing, selling, and shipping of goods or services to consumers in violation of the Washington CPA;

c.      Order Amazon to pay restitution or damages in an amount to be proven at trial;

d.      Award civil penalties in an amount to be proven at trial, and as authorized per violation of the Washington CPA;

e.      Award costs of this action and reasonable attorney's fees; and

f.      Grant such further relief as the Court deems just and proper.

DATED this 5th day of December, 2024.

Respectfully submitted,

**WASHINGTON INJURY LAW**

_____
Janelle N. Bailey
*WA Bar No.* 54586
*MO Bar No.* 64192
*GA Bar No.* 456672
*USPTO Bar No.* 68551

1905 Queen Anne Avenue North, Suite 300
Seattle, Washington 98109
Telephone: (206) 960-4522
Facsimile: (206) 960-4522
Email: Janelle@WashingtonInjuryLaw.com

*/s/ Jarrett L. Ellzey*

**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
Jarrett L. Ellzey*
Texas Bar No. 24040864
jellzey@eksm.com
Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com

4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

*Counsel will seek pro hac vice admission

**ATTORNEYS FOR PLAINTIFFS**