THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ALAMAZE KING, ET AL.,

              Plaintiffs,

    v.

AMAZON.COM SERVICES LLC,

              Defendant.

Consolidated Case No. 2:24-cv-02009-KKE

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Alamaze King, Karina Villafuerte, Emir Gur-Ravantab, May Wood, Leonard Gray, Ebony Bruce, Chris Palumbo and Kopen Henderson individually and on behalf all others similarly situated, bring this Class Action Complaint (the "Complaint") against Amazon.com, Inc. ("Amazon" or "Defendant") for violations of the Washington State Consumer Protection Act ("CPA"), RCW 19.86, *et seq*. In support of their claims, Plaintiffs state as follows:

## I.    INTRODUCTION

1.    Amazon, the world's dominant online retailer, entices consumers to sign up for its Prime membership service by promising speedy Two-Day and One-Day package delivery to millions of customers. When Amazon introduced the Prime program in 2005, it promoted its "Prime-eligible" catalog of products – namely those products that Amazon had promised would be shipped and delivered in two days. Through Amazon's heavy marketing and increased public reliance on Amazon's fast delivery program, the association between Prime-eligibility and Two-Day shipping has grown even stronger since the program's inception. But while Amazon has increased the array of products in its Prime-eligible catalog (i.e., those products available for

extra fast shipping for most Prime members), it has been dismantling those benefits for Prime members in historically underserved neighborhoods and ZIP codes ("Underserved Zones"), while charging them the same price as members in full-service areas.

2.      Amazon's ability to deliver millions of products to its vast network of Prime members in such a short time frame is due to a complex distribution system and its heavy reliance on a network of Amazon-controlled delivery service partners ("Amazon DSP" or "DSP"), a network of delivery contractors who are subject to Amazon's strict controls to ensure that Amazon can fulfill its commitment to Prime members. Amazon's use of DSP is essential to its ability to make available to millions of Prime members the promise of Two-Day shipping on the full catalog of its millions of Prime-eligible products.

3.      In recent years, Amazon has quietly and deliberately been de-listing ZIP codes and neighborhoods around the country from its DSP service. In these Underserved Zones, Amazon stopped using DSP to deliver its Prime-eligible catalog of products to Prime members, and now relies instead on third parties, namely United Parcel Service ("UPS") and the U.S. Post Office ("USPS") (collectively, "Third Party Delivery"). Amazon made this decision while knowing that such groups deliver at a slower pace. As a result, Prime members in the Underserved Zones increasingly find that "Prime-eligible" does not mean what Amazon says it means: most of these products simply are not available for delivery in two days (and few if any products are available for One-Day delivery). Even when Amazon is able to deliver the same products one or two days to Prime members a few miles, or even blocks, away, Prime members in the Underserved Zones do not receive the same level of service, despite paying the same amount.

4.      Nowhere during the enrollment process, nor at any point during their memberships, does Amazon disclose to these Prime members in the Underserved Zones that they will not receive the promised benefits of Prime enrollment. Specifically, Amazon has failed to disclose that it has (1) instituted and maintained a delivery exclusion on the Underserved Zones, restricting its speedy DSP service from providing regular service to those areas; and (2) because Amazon uses Third Party Delivery predominately or exclusively in the Underserved

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 2
Case No. 2:24-cv-02009-KKE

Zones rather than DSP, Prime members will receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere. But Amazon knows that its robust catalog of products eligible for Two-Day delivery is the key reason why people purchase a Prime membership. Non-members receive free delivery within five to eight days on most purchases, so the promise of deliveries within two days or less is a material factor in consumers' willingness to enroll in Amazon's Prime membership service and pay its steep price of $139.00 per year or $14.99 per month. The promise of Two-Day shipping on Amazon's massive catalog of Prime-eligible items is particularly material to consumers in Underserved Zones, who often live in areas that have fewer services and retail establishments nearby. Accordingly, these consumers turn to companies like Amazon to fill the gap to quickly deliver essential goods that they cannot easily find locally.

5.     Amazon's secret decision to blacklist the Underserved Zones from its flagship DSP service is misleading and unfair. When Amazon decides to exclude areas from its proprietary delivery system, Amazon does not inform consumers in these Underserved Zones – either in any disclosures before enrolling, nor during the term of their membership. And while Amazon has stated that the reduced services are due to its concerns about driver safety in some of the Underserved Zones, Amazon has not altered its advertising or pricing to consumers in these Underserved Zones.

6.     Regardless of what Amazon's reasons are for denying the full benefits of Prime to members in the Underserved Zones, Amazon should not make promises to Prime members that it knows it cannot keep. Amazon's lack of transparency means that residents of the Underserved Zones—both existing and potential Prime consumers—cannot make informed decisions about whether to sign up for or continue to pay for a Prime membership. In addition, were Amazon upfront about its exclusion practice, these Prime members could simply decline to enroll in Prime or explore other options for meeting their basic needs. This is particularly important for consumers in the Underserved Zones, who time and again receive poorer service based on where they live.

7.      To stop Amazon's deceptive and unfair practice of misrepresenting the benefits of Prime and knowingly offering slower delivery to those in Underserved Zones, who are more likely to depend on Amazon for basic goods, Plaintiffs bring this lawsuit on behalf of themselves and similarly situated Prime members in the Underserved Zones, who overpaid for Prime memberships in violation of Washington's CPA.

## II.      JURISDICTION

8.      This Court has jurisdiction under RCW 2.08.010 because Plaintiffs seek damages in excess of three hundred dollars and as an action to enforce the Consumer Protection Act under RCW 19.86.090.

9.      This Court has personal jurisdiction because Amazon is a Washington corporation doing business in King County, Washington and its Prime Terms and Conditions require all actions to be brought in the state or federal courts of King County, Washington.

10.     Venue is proper under RCW 4.12.020(3) and RCW 4.12.025 because some or all of the events giving rise to this action occurred in King County, Washington, because Amazon is headquartered and therefore resides in King County, Washington and its Prime Terms and Conditions require all actions to be brought in the state or federal courts of King County, Washington.

## III.      PARTIES

11.     Plaintiff Alamaze King is a resident of Washington, D.C., and resides within zip code 20020.

12.     Plaintiff Karina Villafuerte is a resident of Chicago, Illinois. She lives at 2920 W Fulton, Chicago, IL 60612, in the East Garfield Park neighborhood.

13.     Plaintiff Alamaze King is a resident of Washington, D.C., and resides within zip code 20020

14.     Plaintiff May Wood is a resident of Washington, D.C., and resides within zip code 20020.

15.     Plaintiff Leonard Gray is a resident of Washington, D.C., and resides within zip code 20019.

16.     Plaintiff Ebony Bruce is a resident of Washington, D.C., and resides within zip code 20019.

17.     Defendant Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, WA 98109. Amazon markets, sells, and ships a wide variety of consumer goods and products through its websites and mobile application to consumers in the United States.

## IV.     FACTUAL ALLEGATIONS

**A.     Overview of Amazon's Operations and the Prime Business Model**

18.     Amazon is an e-commerce conglomerate that markets, sells, and delivers consumer goods to customers throughout the country. Amazon offers consumers the ability to order a vast assortment of products from its website or mobile application and have them delivered directly to the consumer.

19.     Over the past two decades, Amazon has become the dominant online retailer for nearly anything a consumer could want, from basic household supplies to high-end consumer electronics.

20.     Amazon's massive customer base is due, in large part, to its Prime membership service, which currently costs $139.00 per year or $14.99 per month, and has been priced similarly throughout the class period. To entice new enrollment, Amazon offers some consumers discounted promotional rates, such as an annual membership for $69.00. According to Bloomberg, 180 million Americans—more than 75% of American adults—are members of Prime, Amazon's paid membership service.[1]

---

[1] Spencer Soper, *Amazon Prime Memberships in US Gain 8% to New High After Lull*, BLOOMBERG, Apr. 16, 2024, https://www.bloomberg.com/news/articles/2024-04-16/amazon-prime-memberships-in-us-gain-8-to-new-high-after-lull.

21.     Amazon advertises the Prime membership program to all Amazon shoppers. It promises that members receive "fast, free delivery" on "millions of items" that are Prime-eligible on Amazon's website and mobile application. As described further below, Amazon heavily markets its Prime membership program, including its "Two-Day," "One-Day," and "Same-Day" shipping options for Prime members.

22.     Prime membership means that when shopping on Amazon, Amazon will provide members with free Two-Day shipping on the full catalog of products Amazon designated as "Prime-eligible" – and many members also receive free One-Day shipping on a large portion of the millions of products in Amazon's Prime-eligible catalog. Amazon's catalog of Prime-eligible products includes those that are sold by Amazon, as well as some products sold by third parties but that are "fulfilled by Amazon," meaning that the third parties deliver the products to Amazon warehouses and fulfillment centers for Amazon to ship. Amazon's long term marketing campaign emphasizing the expedited shipping, its ever-growing catalog of Prime-eligible products, and its rollout of a growing selection of Prime-eligible products available for One-Day and Same-Day shipping have all helped to strengthen the public's association between the Prime membership and extra-fast shipping, and between Prime-eligibility and delivery in two days.

23.     Prime members searching for goods on Amazon's website and mobile app can filter their search to narrow the list of available products to see only the Prime-eligible catalog. Because Amazon has long touted Prime-eligible to mean that a product is available for Two-Day shipping, Prime members expect that when they filter to see Prime-eligible options for any given product search, that the results will return products available for "the hallmark of Amazon's membership program,"[2] Two-Day shipping. Members can often further filter those

---

[2] Jason Del Rey, *Some Amazon Prime customers say they don't have two-day shipping anymore*, Vox (Sept. 7, 2022), https://www.vox.com/recode/2022/9/7/23333406/amazon-prime-2-day-shipping-delays-taking-long.

search results to find out which, if any, of the Prime-eligible products are available for One-Day or Same-Day delivery.

**B.      Because Expedited Shipping is Material to Consumers' Decision to Enroll in Prime, the Benefit is Featured Prominently in Amazon's Advertising About Prime.**

24.      While a Prime membership includes some other benefits, the promise of free Two-Day shipping on millions of products in its catalog is by far Prime's most well-known and well-advertised benefit.

25.      Prime's advertised Two-Day free shipping is the top reason why people enroll in the service.[3] Prime members cite this as their primary reason for purchasing a membership, above Prime's other advertised perks, such as Prime's video-streaming service.[4] In fact, according to Sean Solme Kin, former head of product at Prime, most Prime members are only familiar with Prime's expedited shipping, and completely unaware of the 50+ other membership perks.[5] And Amazon's CEO of Worldwide Amazon Stores admits: "One thing we've learned about customers over the years is the importance they place on delivery speed. The faster we can get products to customers, the more likely they are to buy them."[6]

---

[3] Samantha B. Gordon, *Pros and Cons of Amazon Membership*, CONSUMER REPORTS (July 2, 2024), https://www.consumerreports.org/money/online-shopping/pros-cons-amazon-prime-a7384439028/ ("The main driver of Amazon Prime has always been free expedited shipping for over 100 million products, with many customers now eligible for one- and two-day shipping at no additional cost."); Stephanie Chevalier, *Key Factors for U.S. Users to Shop via Amazon 2020*, STATISTA (Feb. 13, 2024), https://www.statista.com/statistics/670499/us-amazon-usage-reason/.

[4] Brian Welk, *Prime Video Is Gaining on Free Shipping as the Main Reason People Subscribe to Amazon Prime,* INDIEWIRE (June 28, 2024), https://www.indiewire.com/news/business/prime-video-gaining-free-shipping-main-reason-subscribe-amazon-prime-1235020800, ("Sixty-one percent of respondents chose Prime Video among the main reasons they subscribe; 73 percent chose the shipping benefit.")

[5] Product Thinking by Melissa Perri, *The Eye-Opening Discovery About Amazon Prime's Unused Benefits,* YOUTUBE (Nov. 2, 2024), https://www.youtube.com/watch?v=LaFyypoo7NI, ("If you were to ask ten people, nine of them would say, I had no idea you offered these other 53 benefits.")

[6] Doug Herrington, *Amazon Delivered to Prime Members at the Fastest Speeds Ever in 2023—and Is Working to Get Even Faster in 2024*, ABOUT AMAZON (Jan. 30, 2024), https://www.aboutamazon.com/news/operations/doug-herrington-amazon-prime-delivery-speed-2024-updates.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 7
Case No. 2:24-cv-02009-KKE

26.     While people who do not have a Prime membership can still purchase products from Amazon, delivery is only free if the purchase is over $35.00, and in that instance, takes an estimated five to eight days, with consumers able to pay additional fees, typically $6.99, to receive the products faster. Thus, because consumers can easily receive free shipping and can obtain fast shipping on an order for less than the cost of one month of membership, consumers' main incentive to enroll in Prime is to receive Two-Day shipping on frequent orders of many items. And this model is win-win for Amazon, which receives not only Prime membership revenue, but increased purchases from members who depend on fast shipping.

27.     Because expedited shipping is a key driver in a consumer's decision to enroll in Prime, Amazon has for years emphasized that benefit, promoting its speedy delivery prominently and repeatedly in its advertising, which often refers simply to "Two-Day," "One-Day," and "Same-Day" delivery on Prime-eligible catalog items, with no other qualifying language or disclosure. The advertising has consistently been featured on various pages Amazon's website, [www.amazon.com](www.amazon.com), as well as in marketing emails and display ads disseminated to people across the internet.

28.     For example, in 2022, Amazon prominently advertised Two-Day shipping:



29.     And the below 2021 ad promises that Amazon is "The Same-Day Store" for millions of items.



30.     In marketing emails sent to consumers in affected areas enticing them to enroll in Prime, Amazon highlights "Delivery" as the first of the "great benefits included with your membership." Amazon boasts of the fast shipping options of Two-Day, One-Day, and Same-Day Delivery available to Prime members, without notice that this may not be available in the consumer's area.

31.     Amazon also reinforces the unqualified speed of delivery by omitting any mention of decisions Amazon might make that would affect the speed of delivery, as seen below:



32.     Throughout the sign-up process, Amazon highlights fast shipping as the hallmark benefit of a Prime membership. When a person navigates to Amazon.com, often, the most prominent link they are confronted with is a button inviting them to "Join Prime," as shown below:



33.     Upon clicking that button to join Prime, a consumer is presented with Amazon touting "Fast, free delivery" as the primary benefit conferred by Prime, specifically highlighting that "millions of items" will take at most two days to arrive under "Same-Day, One-Day, and Two- Day Delivery," as displayed below:



CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 10
Case No. 2:24-cv-02009-KKE

**C.      Amazon's Prime Membership Marketing Leads Consumers to Believe that Two-Day Shipping is Available on the Full Catalog of Prime-eligible Products.**

34.      When potential Prime members view the Prime signup page, identified above, they are invited to learn more about Prime benefits through the "Prime Insider" page:



35.      Clicking on this link, the first of the "Prime Membership Benefits" that Amazon lists is its "Delivery benefits."



36. The only delivery speed that mentions the potential of a geographic limitation is the third option listed, "FREE Same-Day Delivery," which is only available in "select areas." The Two-Day and One-Day options have no such qualification.

37. If a consumer clicks on "FREE Two-Day Delivery" or "FREE One-Day Delivery" to learn more about their ability to enjoy that benefit as a Prime member, they are taken to https://www.amazon.com/gp/help/customer/display.html. There, Amazon provides a further explanation of Prime shipping speed benefits:

Shipping and Delivery › Amazon Prime › Amazon Prime Benefits ›

## Amazon Prime Delivery Benefits - Eligible Items and Addresses

Products eligible for Amazon Prime will be designated on the product page and at checkout. If only some items in your purchase are eligible for Amazon Prime, you'll be charged applicable shipping fees for the ineligible items. Delivery benefits and speeds vary from item to item, and not all benefits and speeds are available in all areas. Addresses outside of the United States of America are not eligible for Prime delivery benefits.

| Shipping Speed | Items & Addresses |
| --- | --- |
| FREE Two-Day Delivery | • Items sold by Amazon.com that are marked on the product page and at checkout.<br>• Many items that are fulfilled by Amazon.<br>• Items that are fulfilled by qualified sellers that are marked on the product page and at checkout.<br>• Nearly all addresses in contiguous U.S. |
| FREE One-Day Delivery | • Filter by "Get it tomorrow" when shopping. Selection and order cutoff varies by area.<br>• Items sold by Amazon.com that are marked on the product page and at checkout.<br>• Many items that are fulfilled by Amazon.<br>• Available for the majority of customers in contiguous US on tens of millions of eligible items. |
| FREE Same-Day Delivery | • Items sold by Amazon.com that are marked on the product page and at checkout.<br>• Many items that are fulfilled by Amazon.<br>• Eligible for shipments to specified zip codes in several cities within contiguous U.S. Check your zip code here. Commercial addresses are not eligible.<br>• For more information about FREE Same-Day Delivery for Amazon Prime members, go to Order with Prime FREE Same-Day Delivery. |

38. Amazon displays the above information to all Prime and potential Prime members, regardless of the person's location. The above information reinforces the

expectation that Prime-eligible means eligible for Two-Day delivery. While Amazon asserts simply that "FREE Two-Day Delivery" is available for "[n]early all addresses in contiguous U.S.," it does not provide any information that would allow a consumer to determine if Two-Day delivery on Amazon's catalog of Prime-eligible products is available to them. Nor does Amazon provide information to allow a consumer to determine if "FREE One-Day Delivery" is available in their area. And Amazon does not provide a way for consumers who are not Prime members to conduct the kinds of filtered searches described in Paragraph 54 to explore the selection of products available to them on expedited timelines if they enroll, nor does Amazon disclose to consumers that they should browse its options for Two-Day delivery in their areas to see if Amazon even provides much of a selection.

39. The only shipping category that gives a consumer the ability to check their address to confirm eligibility for shipping speed benefits is "FREE Same-Day Delivery," which at times has allowed the consumer signing up for Prime to check their ZIP code. While Amazon qualifies that Same-Day delivery may only be available in certain ZIP codes, it does not make the same disclosure for Two-Day and One-Day delivery options, leaving the consumer with the impression that the availability of reliable Two-Day and One-Day delivery does not vary by ZIP code.

40. Consumers cannot rely on Amazon's Same-Day availability search function to inform them as to whether One-Day and Two-Day delivery options are available where they live. For example, as discussed in more detail in Paragraph 43 below, Amazon does provide some Same-Day delivery to some of the Underserved Zones. Thus, a consumer who checks to see whether Same-Day delivery is offered in their ZIP code might reasonably conclude that One- and Two-Day delivery is also available there.

41. Even in its fine-print Prime membership terms and conditions, Amazon merely states, without any further explanation, that "Prime shipping benefits depend upon . . . in some

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 13
Case No. 2:24-cv-02009-KKE

cases the shipping address."[7] While consumers might understand that some delays might occasionally arise due to weather or demand or other circumstances or that unusually bulky items, like furniture, might require special delivery exceptions, Amazon's terms and other fine print disclaimers are insufficient to put a consumer on notice that Amazon has knowingly chosen to use a slower delivery service for its catalog of Prime-eligible products when making most or all of its deliveries to their community, ensuring they will be denied the full benefits of Prime.

42.     Moreover, most of the Underserved Zones are in metropolitan areas. While their own neighborhoods might lack a lot of retail outlets and other services, people in Underserved Zones often live in or near large population centers, have paved roads that are maintained in times of inclement weather, and do not have to travel to post offices to receive mail from a P.O. Box. Thus, because Amazon does not provide any information to allow a person to discern whether One- and Two-Day shipping is available to them, consumers in urban, suburban, or other moderately or densely populated Underserved Zones reasonably assume that any limitations on delivery services would be more likely to apply to people in more remote, rural parts of the country, and not to urban and suburban areas where goods can be efficiently delivered.

43.     In all of Amazon's advertisements and throughout the sign-up process, Amazon highlights Two-Day, One-Day, and Same-Day delivery as the hallmark benefit of a Prime membership. But that benefit is not provided equally to all consumers in the Underserved Zones, and Amazon does not disclose that fact to its customers.

**D.     Amazon Uses Slower Delivery Services in the Underserved Zones**

44.     Despite heavily advertising its One- and Two-Day delivery benefits of Prime membership, Amazon does not make those benefits available to all Prime members.

---

[7] Amazon Prime Terms & Conditions - Amazon Customer Service, available at https://www.amazon.com/gp/help/customer/display.html?nodeId=G2B9L3YR7LR8J4XP (last accessed Dec. 9, 2024).

(i)      Overview of Amazon's Shipping and Delivery Processes

45.      Prime-eligible catalog products go through one of two delivery processes, based on whether they are purchased for Same-Day delivery, or whether they are a regular Prime-eligible order ("Regular Prime Orders"). For Regular Prime Orders, first, the product is picked, packaged, and labeled at an Amazon warehouse, called a fulfillment center. Before the package is labeled for shipping by a carrier there, Amazon determines whether to deliver the package with its own Prime-branded, proprietary shipping infrastructure (i.e., Amazon DSP) or Third Party Delivery. From the fulfillment center, a package goes to an Amazon "sortation center," where packages are sorted by destination ZIP code and carrier. From there, the package is transported to an Amazon delivery station or a Third Party Delivery facility, such as a U.S. Post Office, for the "last mile" delivery to the customer's home or other shipping address. If a package goes to an Amazon delivery station, the package is loaded directly onto a truck run by Amazon DSP. If the package goes to a Post Office or UPS facility, those Third Party Delivery carriers will further sort and process the package for last-mile delivery.

46.      This process is designed to ensure that consumers receive the fastest shipping possible on the items they purchase. For most Prime members, that means that Amazon will only send their product to be delivered via a Third Party Delivery in the rare instance that doing so is faster. Amazon knows that when it only delivers packages via Third Party Delivery, packages often arrive to consumers slower than those delivered via its Amazon DSP. As discussed below, however, for the Underserved Zones, Amazon consistently sends the products out for Third Party Delivery, because it does not provide Amazon DSP to these areas.

47.      Where Amazon has made the decision to only use Third Party Delivery services in a given area, it effectively forecloses the possibility of One-Day delivery options for these areas. While in limited instances, Third Party Delivery can result in consumers receiving their packages in two days, the process does not provide enough time for  delivery in one day if Amazon hands off the products to Third Party Delivery for the last mile.

48.     For Same-Day deliveries, Amazon maintains special facilities closer to metro areas, where fulfillment, sortation, and preparation for "last mile" delivery occurs in one place. Amazon maintains a fleet of "Amazon Flex" workers, who pick up products at these locations to deliver them to consumers. Amazon Flex workers are independent contractors who sign up for shifts in advance, and only learn of the delivery locations when their shift begins. In contrast to the Amazon Flex drivers, the Amazon DSP network is similar to a franchise system, whereby both businesses and individuals contract with Amazon to serve a broader region subject to Amazon's directives and control. Thus, in some Underserved Zones, members might find that grocery delivery or other same-day services are available at times through Amazon Flex, despite Amazon regularly not providing Regular Prime Orders in the Two-Day window.

(ii)     Amazon Systematically Excludes Underserved Zones from its Amazon DSP Network.

49.     Amazon does not always offer delivery using DSP to all shipping addresses. Instead, Amazon has blacklisted the Underserved Zones from their DSP services and utilizes only Third Party Delivery. As a result, those in Underserved Zones find that most of the Prime-eligible catalog is not available for Two-Day shipping, and virtually no products are available for One-Day shipping.

50.     While all Prime members might expect that an occasional Prime-eligible product has a longer than two-day delivery window, or might find a temporary diminishing of products available for One- or Two-Day shipping, consumers expect delays are due to the products being out of stock, unforeseen issues at Amazon's warehouses and fulfillment centers, weather, holidays, or similar occurrences. Consumers do not expect that regularly long delivery windows or a reduction in the available catalog is due to Amazon simply deciding not to service their ZIP code. Temporary interruptions cannot explain the regular diminished service available to Underserved Zones as, in many instances, Amazon will deliver the products in one or two days to neighboring areas just a few miles or even blocks away from Underserved Zones.

51.    Amazon has maintained secrecy regarding this practice and the reasons for it, but a lawsuit filed by the Attorney General of the District of Columbia on December 4, 2024, sheds some light on Amazon's policies. That complaint alleges the following:

> [A]ccording to Amazon's undisclosed internal policies, when Amazon Delivery drivers are presented with an incident of "violence, intimidation, or harassment," Amazon may choose to limit or suspend Amazon Delivery to a single address, block, community, or an entire ZIP code to protect Amazon drivers from experiencing further harassment. Among the most severe suspensions Amazon can impose is an "exclusion." Under an exclusion, Amazon will "suspend" use of Amazon Delivery and only use USPS and UPS for last-mile delivery in the excluded area.
>
> According to Amazon's internal policies, once a delivery exclusion is implemented, it should be re-evaluated every six months. In practice, however, once an exclusion is in place, it can persist indefinitely unless affirmatively lifted by Amazon.

52.    The full details of these internal policies, and the consequences of their application, are not publicly available, and Amazon does not disclose them to consumers. Indeed, Amazon has never publicly acknowledged that entire neighborhoods and ZIP codes may be excluded and thus relegated to slower delivery speeds.

53.    Because Amazon omits material information about what delivery areas are currently excluded and when or why Amazon elects to exclude entire ZIP codes from its Amazon DSP Delivery, a reasonable consumer in the Underserved Zones would expect—and indeed, has no reason to doubt—that they will be able to take advantage of Amazon's heavily touted promise of Two-Day and One-Day delivery when they sign up for a Prime membership, and when they continue to pay for a Prime membership, no matter where they live.

54.    While Amazon maintains in its exclusive control a full list of the Underserved Zones and the data to show the diminished delivery services it provides them, the recent lawsuit by the District of Columbia provides some helpful data. In two DC ZIP codes in which Amazon does not use Amazon DSP, and relies instead on Third Party Delivery, the DC Attorney General alleges that in 2023, these ZIP codes received Amazon deliveries within two days of

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 17
Case No. 2:24-cv-02009-KKE

purchase 25.11% and 23.64% of the time, in contrast to the city-wide number of 74.33% of the time. Before Amazon's decision to blacklist those ZIP codes from receiving deliveries from Amazon Delivery, these ZIP codes were receiving packages within two days of purchase at roughly the same rates or even higher than the city-wide numbers, as can be seen from the below table extracted from that complaint:

| Year | District-Wide | | 20019 | | 20020 | |
|---|---|---|---|---|---|---|
| | Delivered within 2 days of checkout | Volume | Delivered within 2 days of checkout | Volume | Delivered within 2 days of checkout | Volume |
| 2020 | 56.13% | 6,976,347 | 60.31% | 643,817 | 58.94% | 548,631 |
| 2021 | 66.66% | 9,150,897 | 73.17% | 1,027,852 | 72.30% | 883,614 |
| Exclusions instituted June 2022 | | | | | | |
| 2022 | 68.63% | 10,228,053 | 47.65% | 565,234 | 47.94% | 485,577 |
| 2023 | 74.33% | 8,688,261 | 25.11% | 219,702 | 23.64% | 169,951 |

55.     This drop in delivery speed across such a huge number of packages reflects not simple fluctuations in the delivery of a few packages but a widespread and systematic reduction in the level of delivery service provided by Amazon to its Prime members living in ZIP codes 20019 and 20020. The residents in these two ZIP codes in the Anacostia area are predominately Black and, on average, have lower incomes than the rest of the District of Columbia.

56.     Similarly, residents in underserved areas around the country, consumers find that, despite Amazon's increased Prime-eligible catalog, they are increasingly denied the option to receive these products on a two-day timeline, despite paying the same premium for Prime membership that all other Prime members in the US pay. These areas are often predominately populated by people of color and have higher rates of poverty than the areas in which Amazon provides the full benefits of Prime. While Amazon does not disclose whether any given area is excluded from its Amazon DSP service, it is apparent from searching for various common Prime-eligible household items that certain areas simply do not receive the level of Prime service – namely Two-Day shipping on Prime-eligible items – that Amazon advertises and provides to most parts of the country. For example, around the time of filing this complaint, delivery on an assortment of Prime-eligible household items, such as batteries, paper towels, space heaters,

and socks, often takes four to five days to deliver in certain metro areas, whereas these items are delivered within one or two days in other areas, suggesting that Amazon excluded these areas from its DSP network. Examples of these Underserved Zones include the following:

| ZIP Code | City / Neighborhood | Population of Non-White Residents | Poverty Rate |
|---|---|---|---|
| Alabama | | | |
| 36605 | Mobile | 75% (mostly Black) | 29.80% |
| Arkansas | | | |
| 72301 | Crittenden County / West Memphis | 68% (mostly Black) | 24.60% |
| California | | | |
| 94107 | San Francisco / Potrero Hill | 53% (large Asian American pop) | 8.00% |
| 94102 | San Francisco / Tenderloin | 68% (diverse) | 20.10% |
| 90221 | Los Angeles / Compton | 81% (mostly Hispanic) | 17.10% |
| 94601 | Oakland / Fruitvale | 88% (large Hispanic pop) | 18.70% |
| 94531 | East Bay / Antioch | 77% (diverse) | 8.00% |
| Illinois | | | |
| 60624 | Chicago / West Garfield Park | 96% (mostly Black) | 35.90% |
| 60623 | Chicago / North Lawndale | 96% (mostly Hispanic) | 27.00% |
| 60612 | Chicago / East Garfield Park | 78% (mostly Black) | 26.70% |
| 60637 | Chicago / Woodlawn | 85% (mostly Black) | 32.20% |
| 60649 | Chicago / South Shore | 97% (mostly Black) | 30.50% |
| Georgia | | | |
| 31602 | Valdosta | 55% (mostly Black) | 28.40% |
| 31210 | Macon | 46% (mostly white) | 15.10% |
| Kansas | | | |
| 67002 | Wichita Metropolitan Area / Andover | 18% (mostly white) | 3.30% |
| Louisiana | | | |
| 70806 | Baton Rouge | 49% (mostly white) | 22.20% |
| 70068 | LA Place | 51% (mostly Black) | 11.30% |
| New Jersey | | | |
| 07201 | Elizabeth | 88% (mostly Hispanic) | 17.00% |
| Tennessee | | | |
| 38109 | Memphis / Boxtown | 98% (mostly Black) | 30.70% |
| 38122 | Memphis / Binghampton | 57% (mostly Hispanic) | 27.10% |
| Texas | | | |

| 77033 | Houston / Southeast Houston | 74% (mostly Black) | 33.10% |
| 77051 | Houston / Sunnyside | 97% (mostly Black) | 38.00% |

**E.    Consumers Are Misled by Amazon's Diminished Delivery Services to the Underserved Zones.**

57.    As discussed above, Amazon knows that delivery speed is material to Prime members, which is why it so heavily advertises fast shipping.

58.    After Amazon implemented the exclusions, its advertising has deceived hundreds of thousands – or potentially millions – of existing Prime members in Underserved Zones about the speed with which it delivers packages. Amazon's advertising to the public at large, and its messaging to consumers signing up for Prime, inundate consumers with advertisements touting Two-Day and faster shipping speeds on Prime-tagged goods. Based on these advertisements, reasonable consumers who have signed up for Prime memberships, including those in Underserved Zones, expect that they will have access to the full catalog of Prime-eligible products that will be available to be delivered within two days of checkout.

59.    While Amazon often provides delivery estimates to consumers before they make their purchase, Amazon's misrepresentations about Two-Day shipping benefits of Prime membership as a whole are misleading. Because Amazon does not disclose that it exclusively uses delivery services that take longer – either at the time of enrollment in Prime or at any other point – consumers in the Underserved Zones may conclude that the longer delivery window is connected to the product itself, and not because of Amazon's knowing decision to reduce delivery services across its entire catalog of Prime-eligible products. These consumers are harmed not just by overpaying for Prime, but by spending additional time trying to find a similar product that will be delivered more quickly, and often doing so futilely, expending time and energy searching for a product choice that Amazon does not make available. Notably, while Amazon allows consumers to filter for "Prime-eligible" products, and then again for those available for One-Day delivery, Amazon does not provide a way for consumers to filter those Prime eligible options for those that are eligible for Two-Day delivery, increasing the time that consumers spend searching for an adequate choice that will be delivered expeditiously. And

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 20
Case No. 2:24-cv-02009-KKE

Amazon benefits from these consumers increased time spent searching for elusive products on its platform, as Amazon gets increased views on sponsored advertisements that it displays in search results and increased opportunities to display other related items to these consumers that these consumers might ultimately purchase.

60. By failing to disclose to these existing Prime members in the Underserved Zones that their addresses were and are being excluded from delivery by Amazon Delivery and that they thus would and do receive slower delivery speeds, Amazon has deceived these consumers. Specifically, Amazon has failed to disclose that it has (1) instituted and maintained a delivery exclusion on the Underserved Zones, restricting its speedy DSP service from providing regular service to those areas; and (2) because Amazon uses Third Party Delivery predominately or exclusively in the Underserved Zones rather than DSP, Prime members will receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere. Amazon thus has omitted facts material to those consumers' decisions to continue paying for their Prime memberships.

61. By failing to notify potential new Prime members who live in Underserved Zones before they sign up and pay for Prime that their addresses are excluded from Amazon DSP service, Amazon similarly omits the material fact that these consumers will receive slower shipping speeds than neighboring areas, despite paying the same Prime membership fees, and that they will only occasionally receive Two-Day delivery.

62. Amazon's deceptive practices have a significant impact on and come at a high cost to consumers in Underserved Zones. When a new Prime member signs up, they are committing $139.00 per year, or $14.99 per month, for the service. After committing that amount of money, consumers often rely on Prime for the delivery of many basic necessities, like household items, groceries, and childcare products.

63. This is particularly true for consumers in the Underserved Zones. For example, in the 60649 ZIP code, which has a median household income of $39,862, 30.5% of the population lives in poverty and there are only two full-service grocery stores. In 60637, which has a median

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 21
Case No. 2:24-cv-02009-KKE

household income of $37,247, 32.2% of the population lives in poverty and there are only two full-service grocery stores; and in 90221, which has a median household income of $64,439, likewise only has two full-service grocery stores. But these are the very consumers that Amazon has chosen to deceive through the above series of misrepresentations and omissions, which have denied them both the full benefit of the Prime membership they have paid for and the opportunity to make informed decisions about whether and how to use Prime services.

**V.      PLAINTIFFS' EXPERIENCES**

**A.      Plaintiff Karina Villafuerte**

64.      Plaintiff Karina Villafuerte is a resident of Chicago, Illinois. She lives at 2920 W Fulton, Chicago, IL 60612, in the East Garfield Park neighborhood.

65.      Plaintiff Karina Villafuerte has lived at her residence in the East Garfield Park neighborhood of Chicago, Illinois for nearly four and a half years. She has a busy schedule and relies heavily on delivery options. Ms. Villafuerte first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2018. She has consistently been a member ever since. Ms. Villafuerte subscribed to Amazon Prime on a monthly basis between 2018 and 2023. Ms. Villafuerte then transitioned to an annual subscription in April of 2023. Her annual subscription most recently renewed on April 10, 2024. The main reason Ms. Villafuerte is a Prime member is for expedited shipping.

66.      Since becoming a member, Ms. Villafuerte annually spends thousands of dollars on Prime delivery orders. Ms. Villafuerte enjoyed fast Two-Day shipping on many items for the first several years of her membership. However, over approximately the past two years, she has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer, and virtually no items are available, or ever have been available, for One-Day delivery.

67. Like most Americans, Ms. Villafuerte regularly shops for everyday items on Amazon. Recently she has searched for and ordered items including a backpack, replacement toothbrush heads, stickers, a camera strap, mouthwash, headphones, and children's toys. When she searches for these items on Amazon's website, she usually filters by Prime eligibility to ensure she will receive the items quickly. While Ms. Villafuerte long understood that Prime-eligible meant that a product would be available in two days or less, Ms. Villafuerte is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping, and that often there is a dearth of items available to her within Prime's advertised two days. When searching for items available for delivery to her home, Ms. Villafuerte often has no or few items available to her with One-Day or Two-Day shipping. As a result, Ms. Villafuerte must spend longer searching Amazon's website, and viewing Amazon's sponsored ads, to find a suitable item arriving in the Two-Day timeframe. While Ms. Villafuerte used to be able to quickly find items, the process now takes much longer.

68. Further, even when Ms. Villafuerte can find Prime-eligible items that display as available for shipping within two days, often when she gets to checkout, the estimated time for delivery jumps to four or more days. Ms. Villafuerte has repeatedly discovered that her already-limited search results with Two-Day shipping are further curtailed when she is shown the item's true, longer delivery date at checkout.

69. Ms. Villafuerte now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Ms. Villafuerte's neighborhood is one Underserved Zone. When Ms. Villafuerte receives orders from Amazon at her apartment, USPS routinely delivers the items, as reflected by the Amazon tracking history. And while Ms. Villafuerte used to see Amazon delivery vehicles and personnel in her neighborhood regularly, Ms. Villafuerte does not recall seeing them at all in the last three months. And One-Day shipping is generally not available on any product.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 23
Case No. 2:24-cv-02009-KKE

70.    At no time did Amazon communicate to Ms. Villafuerte that she would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in her neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in her area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give her access to millions of products in its catalog that would be available for Two-Day shipping.

71.    Ms. Villafuerte is heavily dependent on Prime delivery options. Ms. Villafuerte does not have a car and there are no brick-and-mortar stores within walking distance of her residence.

72.    Ms. Villafuerte enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform her that (1) it would and ultimately did institute and maintain a delivery exclusion in her neighborhood, restricting its speedy DSP service from providing regular service to her area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in her area rather than DSP, as a Prime member, she would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.. At the same time, Amazon unfairly and deceptively advertised to her that Prime membership would give her access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to her, Ms. Villafuerte would have declined to enroll, paid less for membership, and/or spent less time

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 24
Case No. 2:24-cv-02009-KKE

on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**B.      Plaintiff Alamaze King**

73.      Plaintiff Alamaze King is a resident of Washington, D.C., residing on Naylor Road SE.

74.      Plaintiff King's residence is within zip code 20020. Zip code 20020 is on Amazon's list of excluded zip codes. Because of this, Plaintiff King has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

75.      Plaintiff King has a busy schedule and relies heavily on delivery options. Plaintiff King first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2018. She has consistently been a member ever since. Plaintiff King depends on Amazon Prime for the convenience it offers.

76.      Since becoming a member, Plaintiff King regularly makes Prime delivery orders. Initially, Plaintiff King enjoyed fast Two-Day shipping on many items; however, over approximately the past year, she has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer.

77.      Like most Americans, Plaintiff King regularly shops for everyday items on Amazon. When she searches for these items on Amazon's website, she usually filters by Prime eligibility to ensure she will receive the items quickly. While Plaintiff King long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff King is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

78.      Plaintiff King now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff King's neighborhood is one Underserved Zone.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 25
Case No. 2:24-cv-02009-KKE

79.     At no time did Amazon communicate to Plaintiff King that she would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in her neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in her area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give her access to millions of products in its catalog that would be available for Two-Day shipping.

80.     Plaintiff King depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

81.     Plaintiff King enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform her that (1) it would and ultimately did institute and maintain a delivery exclusion in her neighborhood, restricting its speedy DSP service from providing regular service to her area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in her area rather than DSP, as a Prime member, she would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.. At the same time, Amazon unfairly and deceptively advertised to her that Prime membership would give her access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to her, Plaintiff King would have declined to enroll, paid less for membership, and/or spent less time

on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**C.     Plaintiff Emir Gur-Ravantab**

82.     Plaintiff Emir Gur- Ravantab is a resident of Washington, D.C., residing on V Street SE in the Anacostia Historic District. He has lived at this residence for nearly two and a half years.

83.     Plaintiff Gur-Ravantab's residence is within zip code 20020. Zip code 20020 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Gur-Ravantab has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

84.     Plaintiff Gur-Ravantab's has a busy schedule and relies heavily on delivery options. Plaintiff Gur-Ravantab first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2018. He has consistently been a member ever since. Plaintiff Gur-Ravantab subscribed to Amazon Prime on an annual basis. His annual subscription most recently renewed on October 21, 2024. The main reason Plaintiff Gur-Ravantab is a Prime member is for expedited shipping.

85.     Since becoming a member, Plaintiff Gur-Ravantab regularly makes Prime delivery orders. Initially, Plaintiff Gur-Ravantab enjoyed fast Two-Day shipping on many items; however, over approximately the past year, he has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer.

86.     Like most Americans, Plaintiff Gur-Ravantab regularly shops for everyday items on Amazon, as well as items that are not available to him in local stores. When he searches for these items on Amazon's website, he usually filters by Prime eligibility to ensure he will receive the items quickly. While Plaintiff Gur-Ravantab long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Gur-Ravantab is often frustrated by

the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

87.     Plaintiff Gur-Ravantab now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Wood's neighborhood is one Underserved Zone.

88.     At no time did Amazon communicate to Plaintiff Gur-Ravantab that he would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in his neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in his area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give him access to millions of products in its catalog that would be available for Two-Day shipping.

89.     Plaintiff Gur-Ravantab depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

90.     Plaintiff Gur-Ravantab enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform him that (1) it would and ultimately did institute and maintain a delivery exclusion in his neighborhood, restricting its speedy DSP service from providing regular service to his area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in his area rather than DSP, as a Prime member, he would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere. At the same time, Amazon unfairly and deceptively advertised to

him that Prime membership would give him access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to him, Plaintiff Gur-Ravantab would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**D.      Plaintiff May Wood**

91.      Plaintiff May Wood is a resident of Washington, D.C., residing on V Street SE in the Anacostia Historic District. She has lived at this residence for about nine years.

92.      Plaintiff Wood's residence is within zip code 20020. Zip code 20020 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Wood has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

93.      Plaintiff Wood has a busy schedule and relies heavily on delivery options. Plaintiff Wood first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2016. She has consistently been a member ever since. Plaintiff Wood subscribed to Amazon Prime on an annual basis. Her annual subscription most recently renewed on September 1, 2024. Plaintiff Wood depends on Amazon Prime for the convenience it offers.

94.      Since becoming a member, Plaintiff Wood regularly makes Prime delivery orders. Initially, Plaintiff Wood enjoyed fast Two-Day shipping on many items; however, over approximately the past year, she has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer.

95.      Like most Americans, Plaintiff Wood regularly shops for everyday items on Amazon, especially when she does not have time to go to the store. When she searches for these items on Amazon's website, she usually filters by Prime eligibility to ensure she will

receive the items quickly. While Plaintiff Wood long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Wood is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

96.    Plaintiff Wood now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Wood's neighborhood is one Underserved Zone.

97.    At no time did Amazon communicate to Plaintiff Wood that she would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in her neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in her area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give her access to millions of products in its catalog that would be available for Two-Day shipping.

98.    Plaintiff Wood depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

99.    Plaintiff Wood enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform her that (1) it would and ultimately did institute and maintain a delivery exclusion in her neighborhood, restricting its speedy DSP service from providing regular service to her area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in her area rather than DSP, as a Prime member, she would and  ultimately did receive severely curtailed access to Two-Day

shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.. At the same time, Amazon unfairly and deceptively advertised to her that Prime membership would give her access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to her, Plaintiff Wood would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**E.      Plaintiff Leonard Gray**

100.     Plaintiff Leonard Gray is a resident of Washington, D.C., residing on Ely Place SE. He has lived at this residence for approximately seven years.

101.     Plaintiff Gray's residence is within zip code 20019. Zip code 20019 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Gray has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

102.     Plaintiff Gray's has a busy schedule and relies heavily on delivery options. Plaintiff Gray first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2017. He has consistently been a member ever since. Plaintiff Gray subscribed to Amazon Prime on a monthly. His subscription most recently renewed on March 17, 2024. The main reason Plaintiff Gray is a Prime member is for the convenience of expedited shipping.

103.     Since becoming a member, Plaintiff Gray regularly makes Prime delivery orders. Initially, Plaintiff Gray enjoyed fast Two-Day shipping on many items; however, over approximately the past year, he has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer, and virtually no items are available, or ever have been available, for One-Day delivery.

104. Like most Americans, Plaintiff Gray regularly shops for everyday items on Amazon. When he searches for these items on Amazon's website, he usually filters by Prime eligibility to ensure he will receive the items quickly. While Plaintiff Gray long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Gray is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

105. Plaintiff Gray now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Wood's neighborhood is one Underserved Zone. When Plaintiff Gray receives orders from Amazon at his residence, the items are typically delivered by a third-party carrier.

106. At no time did Amazon communicate to Plaintiff Gray that he would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in his neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in his area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give him access to millions of products in its catalog that would be available for Two-Day shipping.

107. Plaintiff Gray depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

108. Plaintiff Gray enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform him that (1) it would and ultimately did institute and maintain a delivery exclusion in his neighborhood,

restricting its speedy DSP service from providing regular service to his area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in his area rather than DSP, as a Prime member, he would and ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere. At the same time, Amazon unfairly and deceptively advertised to him that Prime membership would give him access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to him, Plaintiff Gray would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**F.    Plaintiff Ebony Bruce**

109.    Plaintiff Ebony Bruce is a resident of Washington, D.C., residing on Blaine Street NE. She has lived at this residence for about six years.

110.    Plaintiff Bruce's residence is within zip code 20019. Zip code 20019 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Bruce has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

111.    Plaintiff Bruce has a busy schedule and relies heavily on delivery options. Plaintiff Bruce first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2019. She has consistently been a member ever since. Plaintiff Bruce subscribed to Amazon Prime on a monthly basis. Her annual subscription most recently renewed on March 1, 2025. Plaintiff Bruce depends on Amazon Prime for the convenience it offers.

112.    Since becoming a member, Plaintiff Bruce regularly makes Prime delivery orders. Initially, Plaintiff Bruce enjoyed fast Two-Day shipping on many items; however, over approximately the past year, she has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-

eligible. Instead, estimated shipping times on Prime-eligible products have grown longer. Also, some items that should have been delivered in one day took longer than one day to be delivered.

113.    Like most Americans, Plaintiff Bruce regularly shops for everyday items on Amazon, such as medicine, vitamins and home goods. When she searches for these items on Amazon's website, she usually filters by Prime eligibility to ensure she will receive the items quickly. While Plaintiff Bruce long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Bruce is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

114.    Plaintiff Bruce now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Bruce's neighborhood is one Underserved Zone.

115.    At no time did Amazon communicate to Plaintiff Bruce that she would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in her neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in her area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give her access to millions of products in its catalog that would be available for Two-Day shipping.

116.    Plaintiff Bruce depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 34
Case No. 2:24-cv-02009-KKE

117.   Plaintiff Bruce enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform her that (1) it would and ultimately did institute and maintain a delivery exclusion in her neighborhood, restricting its speedy DSP service from providing regular service to her area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in her area rather than DSP, as a Prime member, she would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.. At the same time, Amazon unfairly and deceptively advertised to her that Prime membership would give her access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to her, Plaintiff Bruce would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**G.    Plaintiff Chris Palumbo**

118.   Plaintiff Chris Palumbo is a resident of Washington, D.C., residing on Elvans Road SE. Plaintiff Palumbo has lived at this residence for approximately three years.

119.   Plaintiff Palumbo resides within zip code 20020.  Zip code 20020 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Palumbo has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

120.   Plaintiff Palumbo's has a busy schedule and relies heavily on delivery options. Plaintiff Palumbo first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2014. He has consistently been a member ever since. The main reason Plaintiff Palumbo is a Prime member is for the convenience of expedited shipping.

121.    Since becoming a member, Plaintiff Palumbo regularly makes Prime delivery orders. Initially, Plaintiff Palumbo enjoyed fast Two-Day shipping on many items; however, over approximately the past year, he has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer, and virtually no items are available, or ever have been available, for One-Day delivery.

122.    Like most Americans, Plaintiff Palumbo regularly shops for everyday items on Amazon. When he searches for these items on Amazon's website, he usually filters by Prime eligibility to ensure he will receive the items quickly. While Plaintiff Palumbo long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Palumbo is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

123.    Plaintiff Palumbo now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Wood's neighborhood is one Underserved Zone. When Plaintiff Palumbo receives orders from Amazon at his residence, the items are typically delivered by a third-party carrier.

124.    At no time did Amazon communicate to Plaintiff Palumbo that he would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in his neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in his area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon consistently represented that Prime membership would give him access to millions of products in its catalog that would be available for Two-Day shipping.

125.    Plaintiff Palumbo depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

126.    Plaintiff Palumbo enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform him that (1) it would and ultimately did institute and maintain a delivery exclusion in his neighborhood, restricting its speedy DSP service from providing regular service to his area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in his area rather than DSP, as a Prime member, he would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere. At the same time, Amazon unfairly and deceptively advertised to him that Prime membership would give him access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to him, Plaintiff Palumbo would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

**H.    Plaintiff Kopen Henderson**

127.    Plaintiff Kopen Henderson is a resident of Washington, D.C., residing on 36th Place SE.

128.    Plaintiff Henderson's residence is within zip code 20020. Zip code 20020 is on Amazon's list of excluded zip codes. Because of this, Plaintiff Henderson has experienced delays in delivery of purchased products that exceed Amazon's promised two-day delivery deadline.

129.    Plaintiff Henderson has a busy schedule and relies heavily on delivery options. Plaintiff Henderson first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds in 2018, and has consistently been a member ever since. Plaintiff

Henderson subscribed to Amazon Prime on an annual basis, with the annual subscription renewing most recently on December 24, 2024. Plaintiff Henderson depends on Amazon Prime for the convenience it offers.

130.    Since becoming a member, Plaintiff Henderson regularly makes Prime delivery orders. Initially, Plaintiff Henderson enjoyed fast Two-Day shipping on many items; however, over approximately the past year, she has noticed when shopping for items on Amazon's platform that fewer items are available for delivery within two days, despite being listed as Prime-eligible. Instead, estimated shipping times on Prime-eligible products have grown longer.

131.    Like most Americans, Plaintiff Henderson regularly shops for everyday items on Amazon. When she searches for these items on Amazon's website, she usually filters by Prime eligibility to ensure she will receive the items quickly. While Plaintiff Henderson long understood that Prime-eligible meant that a product would be available in two days or less, Plaintiff Henderson is often frustrated by the fact that many of the Prime-eligible products appearing in the filtered search results are not available for Two-Day shipping.

132.    Plaintiff Henderson now understands that Amazon does not provide DSP service to all Prime customers and excludes Underserved Zones from receiving packages from a DSP driver, instead relying on Third Party Delivery for all Prime-eligible orders. Plaintiff Henderson's neighborhood is one Underserved Zone.

133.    At no time did Amazon communicate to Plaintiff Henderson that she would experience a reduction in Prime Two-Day shipping benefits due to Amazon's decision to rely exclusively on Third Party Delivery in her neighborhood. Specifically, nowhere in the advertising about the Prime membership program, the sign-up or renewal process, nor in other communications did Amazon disclose that in her area, Amazon does not provide DSP services, and that it would instead rely on Third Party Delivery, resulting in a diminished number of products available for Two-Day shipping and virtually nothing available for One-Day shipping. Instead, in its advertising and communications about Prime membership and renewal, Amazon

consistently represented that Prime membership would give her access to millions of products in its catalog that would be available for Two-Day shipping.

134.    Plaintiff Henderson depends on Prime delivery options and signed up for Amazon Prime for the convenience of two-day delivery.

135.    Plaintiff Henderson enrolled in Prime and paid the annual membership price to obtain access to a catalog of millions of products that would be delivered in two days or less. In the course of enrolling and renewing, Amazon unfairly and deceptively failed to inform her that (1) it would and ultimately did institute and maintain a delivery exclusion in her neighborhood, restricting its speedy DSP service from providing regular service to her area; and (2) because Amazon uses Third Party Delivery predominately or exclusively in her area rather than DSP, as a Prime member, she would and  ultimately did receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.. At the same time, Amazon unfairly and deceptively advertised to her that Prime membership would give her access to millions of "Prime-eligible" products that would be available for Two-Day shipping, when Amazon knew that its exclusive reliance on Third Party Delivery meant that it was unable to guarantee Two-Day delivery on its catalog of Prime-eligible products. Had Amazon truthfully and fairly represented the Prime membership program to her, Plaintiff Henderson would have declined to enroll, paid less for membership, and/or spent less time on Amazon's platform, viewing advertising while searching for Prime-eligible products that were truly Prime-eligible, and available with Two-Day delivery.

## VI.    CLASS ALLEGATIONS

136.    **Class Definition:** Plaintiffs bring this action as a class action under  Rule 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as a member of the Class and Sub-Class defined as follows:

> **National Class**: All persons residing in the contiguous United States who were enrolled in Amazon Prime while residing in any Underserved Zone  within the four years before December 5, 2024.

**D.C. Sub-Class**: All persons residing in the District of Columbia who were enrolled in Amazon Prime while residing in any Underserved Zone  within the four years before December 5, 2024.

Underserved Zone is defined as any ZIP code, region, or neighborhood that Amazon excluded from Amazon DSP delivery service during the period of such exclusion.

137.    **Class Definition Exclusions:** Excluded from the Class and Sub-Class are: (i) Amazon, its assigns, successors, and legal representatives; (ii) any entities in which Amazon has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

138.    **Reservation of Rights to Amend Class Definition:** Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Amazon, or otherwise.

139.    **Numerosity:** Members of the Class and Sub-Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class and Sub-Class consists of at least thousands of Prime members residing in Underserved Zones dispersed throughout the contiguous United States. Accordingly, it would be impracticable to join all members of the Class and Sub-Class before the Court.

140.    **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class and Sub-Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.    Whether Amazon has a practice of failing to provide Two-Day delivery in the Underserved Zones;

b.    Whether Amazon's practice of failing to provide Two-Day delivery in the Underserved Zones is unfair;

c.    Whether Amazon's practice of failing to provide Two-Day delivery in the Underserved Zones is deceptive;

d.    Whether Amazon's practice of failing to provide Two-Day delivery in the Underserved Zones impacts the public interest;

e.    Whether Amazon's practice of failing to provide Two-Day delivery in the Underserved Zones occurred the course of Amazon's trade or commerce;

f.    Whether Amazon used deceptive representations in connection with the sale of Prime memberships in the Underserved Zones in violation of RCW 19.86.020;

g.    Whether Plaintiffs and the Class and Sub-Class are entitled to injunctive relief.

141.    **Typicality:** Plaintiffs' claims are typical of the claims of the National Class Members they seek to represent because Plaintiffs, like the National Class Members, purchased Amazon's Prime membership without Amazon having disclosed that they would not receive Two-Day delivery based on their addresses. Plaintiffs and the Class sustained similar injuries arising out of Amazon's conduct—they paid for a Prime service that Amazon did not deliver. Plaintiffs' Plaintiffs King, Gur-Ravantab, Wood, Gray, and Bruce's claims are typical of the claims of the D.C. Sub-Class they seek to represent because they also reside in the District of Columbia. Class and Sub-Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories as Plaintiffs' claims.

142.    **Adequacy:** Plaintiffs are adequate representatives of the Class and Sub-Class they seek to represent because their interests do not conflict with the interests of the Class and Sub-Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class and Sub-Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

143.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members

of the Class and Sub-Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class and Sub-Class;

b. Absent a Class, the members of the Class and Sub-Class will continue to suffer damage and Amazon's unlawful conduct will continue without remedy while Amazon profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class and Sub-Class Members could afford to or would seek legal redress individually for the wrongs Amazon committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Amazon has been adjudicated, claims of all Class and Sub-Class Members can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class and Sub-Class Members can seek redress for the harm caused to them by Amazon.

144. **Inconsistent Rulings:** Because Plaintiffs seek relief for all Class and Sub-Class Members, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Amazon.

145. **Injunctive/Equitable Relief:** The prerequisites to maintaining a class action for injunctive or equitable relief under CR 23(b)(2) are met as Amazon has acted or refused to act on grounds generally applicable to the Class and Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class and Sub-Class as a whole.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 42
Case No. 2:24-cv-02009-KKE

146.   **Manageability:** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### VII.   CAUSES OF ACTION

#### COUNT I
### VIOLATION OF THE CONSUMER PROTECTION ACT
### (*UNFAIR ACTS OR PRACTICES*)

147.   Prime members in Underserved Zones and Amazon are "persons" within the meaning of the Washington Consumer Protection Act.

148.   Amazon's conduct described in Paragraphs 1-79 is unfair within the meaning of the Washington Consumer Protection Act.

149.   Amazon engaged in unfair acts or practices by marketing and selling its Prime memberships to consumers in a manner that purposely obscures the fact that Underserved Zones will not receive the full benefits of Prime membership.

150.   Amazon's failure to provide the Two-Day delivery it advertises in the Underserved Zones is an unfair act or practice.

151.   Amazon's failure to disclose the limitations of Prime to members in the Underserved Zones, who already lack access to alternative, brick-and-mortar stores with comparable products, and to provide reasonable alternatives to expedited shipping in these areas is immoral, unethical, oppressive, or unscrupulous, especially to the extent that disproportionately impacts low-income communities. Specifically, Amazon has failed to disclose that it has (1) instituted and maintained a delivery exclusion on the Underserved Zones, restricting its speedy DSP service from providing regular service to those areas; and (2) because Amazon uses Third Party Delivery predominately or exclusively in the Underserved Zones rather than DSP, Prime members will receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.

152.   Amazon's practice if charging Prime subscription fees to consumers living in Underserved Zoes causes substantial harm to consumers because they pay Prime subscription fees but don't get the Two-Day Shipping Amazon advertises. The harm is not reasonably avoidable by consumers because Amazon does not tell consumers that Two-Day Shipping is not available in Underserved Zones.

153.   Amazon's marketing and sale of Prime memberships occurred in trade or commerce within the meaning of the Washington Consumer Protection Act and were and are capable of injuring a substantial portion of the public.

154.   Amazon's unfair acts or practices impact the public interest because they have injured the Prime members in Underserved Zones, have injured at least thousands of others, and have the capacity to injure tens of thousands of others. Moreover, Amazon continues to market and sell Prime in Underserved Zones and, as a result, is likely to continue to injure the public.

155.   As a direct and proximate result of Amazon's unfair acts or practices, the Class and Sub-Class Members have suffered an injury in fact and lost money. Specifically, the Class and Sub-Class Members' injuries consist of the monthly or annual membership fees they paid to Amazon.

156.   The Class and Sub-Class Members are therefore entitled to legal relief against Amazon, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

157.   The Class and Sub-Class Members are also entitled to injunctive relief in the form of an order prohibiting Amazon from selling its Prime memberships to consumers in Underserved Areas without making good on the advertised free, expedited shipping.

**COUNT II**
**VIOLATION OF THE CONSUMER PROTECTION ACT**
(***DECEPTIVE ACTS OR PRACTICES***)

158.   Prime members in Underserved Zones and Amazon are "persons" within the meaning of the Washington Consumer Protection Act.

159.   Amazon's conduct described in Paragraphs 1-79 is deceptive within the meaning of the Washington Consumer Protection Act.

160.   Amazon engaged and engages in deceptive acts or practices by marketing and selling its Prime service to the Class Members and other Washington consumers in a manner that purposely misrepresents the nature of the product. Amazon repeatedly represents to consumers in the Underserved Zones that Prime comes with expedited delivery, but in reality, Amazon has throttled its delivery to the Underserved Zones and residents there will not receive their deliveries of Prime-eligible goods in the advertised window of One-Day or Two-Day shipping.

161.   In addition, Amazon has failed to disclose that it has (1) instituted and maintained a delivery exclusion on the Underserved Zones, restricting its speedy DSP service from providing regular service to those areas; and (2) because Amazon uses Third Party Delivery predominately or exclusively in the Underserved Zones rather than DSP, Prime members will receive severely curtailed access to Two-Day shipping on Amazon's catalog of Prime-eligible products, as compared to Prime members residing elsewhere.

162.   These acts or practices are deceptive within the meaning of the CPA because they have the capacity to deceive Washington consumers.

163.   Amazon's marketing and sale of Prime membership occurred in trade or commerce within the meaning of the Washington Consumer Protection Act and were and are capable of injuring a substantial portion of the public.

164.   Amazon's deceptive acts or practices impact the public interest because they have injured the Prime members in Underserved Zones, have injured at least thousands of Washington consumers, and have the capacity to injure tens of thousands of others. Moreover,

Amazon continues to market and sell Prime in the Underserved Zones and, as a result, is likely to continue to injure the public.

165.    As a direct and proximate result of Amazon's deceptive acts or practices, the Class and Sub-Class Members have suffered an injury in fact and lost money. Specifically, the Class and Sub-Class Members' injuries consist of the monthly or annual membership fees they paid to Amazon.

166.    The Class and Sub-Class Members are therefore entitled to legal relief against Amazon, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

167.    The Class and Sub-Class Members are also entitled to injunctive relief in the form of an order prohibiting Amazon from selling its Prime memberships to consumers in Underserved Areas without making good on the advertised free, expedited shipping.

**COUNT III**
**INJUNCTIVE RELIEF**

168.    Under the Washington Consumer Protection Act, "[a]ny person who is injured in his or her business or property" by a CPA violation "may bring a civil action in superior court to enjoin further violations." RCW 19.86.090.

169.    For the reasons stated above, Amazon has violated the Washington Consumer Protection Act, and the Class and Sub-Class Members have been injured in their property by those violations. As a result, Plaintiffs and the Class and Sub-Class Members have standing to seek an injunction to protect the public interest from future violations. See *Hockley v. Hargitt*, 82 Wn.2d 337, 350-51 (1973).

170.    Therefore, Plaintiffs seek an injunction prohibiting Amazon from continuing its unfair and deceptive practices. Specifically, the Plaintiffs ask the Court to enjoin Amazon from advertising Prime membership as providing free, expedited shipping to consumers in the Underserved Zones and to enjoin Amazon from charging full price for Prime as if this service is provided in these areas, when it is not.

**PRAYER FOR RELIEF**

Plaintiffs request that this Court:

A.      Certify this action as a class action under Fed. R. Civ. P. 23;

B.      Appoint Plaintiffs as class representatives of the class under Fed. R. Civ. P. 23;

C.      Appoint Plaintiffs' counsel as class counsel for the class under Fed. R. Civ. P. 23;

D.      Enter a judgment for injunctive and declaratory relief declaring Amazon's unfair or deceptive acts or practices unlawful, and enjoining Amazon from engaging in each of the unfair or deceptive acts or practices set forth herein;

E.      Enter judgment for a monetary award in favor of Plaintiffs and proposed Class Members against Amazon for:

   i.      An amount to be proven at trial awarding Plaintiffs and members of the proposed class all of their damages resulting from Amazon's wrongful conduct as described herein;

   ii.     Treble the damages suffered by Plaintiffs and the proposed Class Members under RCW 19.86.090;

   iii.    All reasonable costs and attorneys' fees incurred by Plaintiffs and members of the proposed class;

   iv.     Prejudgment interest on all actual damages awarded; and

   v.      For any other relief as may be just, legal, and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial by a jury of twelve.

//

//

//

//

//

//

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 47
Case No. 2:24-cv-02009-KKE

RESPECTFULLY SUBMITTED AND DATED this 21st day of March, 2025.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Blythe H. Chandler, WSBA #43387
    Blythe H. Chandler, WSBA #43387
    Email: bchandler@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603

    Kristen Simplicio, *Admitted Pro Hac Vice*
    Email: ksimplicio@clarksonlawfirm.com
    Laura E. Older, *Admitted Pro Hac Vice*
    Email: lolder@clarksonlawfirm.com
    CLARKSON LAW FIRM, P.C.
    1050 Connecticut Avenue, NW
    Washington, DC 20036
    Telephone: (202) 998-2299

    Cody Laux, *Admitted Pro Hac Vice*
    Email: claux@clarksonlawfirm.com
    22525 Pacific Coast Hwy
    Malibu, California 90265
    Telephone: (213) 788-4050

    Jarrett L. Ellzey, *Pro Hac Vice forthcoming*
    Email: jellzey@eksm.com
    Leigh S. Montgomery, *PHV forthcoming*
    Email: lmontgomery@eksm.com
    ELLZEY KHERKHER SANFORD
      MONTGOMERY, LLP
    4200 Montrose Blvd., Sute 200
    Houston, Texas 77006
    Telephone: (888) 350-3931

    Janelle N. Bailey, WSBA #54586
    Email: Janelle@WashingtonInjuryLaw.com
    WASHINGTON INJURY LAW
    1905 Queen Anne Avenue N., Suite 300
    Seattle, Washington 98109
    Telephone: (206) 960-4522

    *Attorneys for Plaintiffs and Proposed Class and Sub-Class*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 48
Case No. 2:24-cv-02009-KKE