UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAMAZE KING, et al., | CASE NO. C24-2009-KKE |
| Plaintiff(s), | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| AMAZON.COM SERVICES LLC, | |
| Defendant(s). | |

Plaintiffs in this consolidated putative class action against Defendant Amazon.com Services LLC ("Amazon") have subscribed to Amazon's Prime service, which offers fast, free delivery of certain items sold by Amazon. Dkt. No. 16 ¶ 21. Plaintiffs allege that although they are Prime subscribers, they do not receive the primary Prime benefit—two-day shipping—as often as other Prime subscribers do. *Id*. ¶ 60. Plaintiffs contend that the reason for the slower service is that, citing driver safety concerns, Amazon has stopped utilizing its network of contractor-operated delivery vans known as delivery service partners ("DSP") in their zip codes. Plaintiffs allege that, without disclosing this fact to subscribers or prospective subscribers, Amazon relies on the United States Postal Service ("USPS") or the United Parcel Service ("UPS") to complete deliveries to households in "Underserved Zones," which takes longer than deliveries by DSP contractors. *Id*. ¶¶ 3–4. Plaintiffs filed this suit against Amazon under Washington's Consumer Protection Act ("CPA"), contending that Amazon's delivery practices are unfair or deceptive. *Id*. ¶¶ 147–70.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

Amazon filed a motion to dismiss for failure to state a claim, contending that Plaintiffs have failed to identify an unfair or deceptive practice, and that Plaintiffs have also failed to plead facts that support the causation element of their claims. Dkt. No. 37.[1] The Court agrees with Amazon that Plaintiffs' complaint fails to state a valid CPA claim and will therefore grant the motion to dismiss.

## I.    BACKGROUND[2]

Plaintiffs are individual consumers who live in either Washington, D.C., or Chicago. Dkt. No. 16 ¶¶ 11–16. Plaintiffs subscribed to Prime for years, and some continue to subscribe to this day, but have noticed over the past two years that fewer items are available for two-day shipping (although Prime-eligible). *Id*. ¶¶ 64–135. And sometimes an item is marked as eligible for two-day shipping until the final checkout page, where the estimated delivery time jumps to four or more days. *Id*. ¶¶ 66–68, 75, 77, 84–85, 94, 102–03, 111–12, 121, 131. Prime subscribers who live in other neighborhoods receive their items faster than Plaintiffs do. *See, e.g.*, *id*. ¶ 56.

Plaintiffs allege that they initially subscribed to Prime mainly for the convenience of expedited shipping. Dkt. No. 16 ¶¶ 65, 75, 84, 93, 102, 111, 120, 129. According to the complaint, Amazon can "deliver millions of products to its vast network of Prime members in such a short time frame" due to a "complex distribution system" and "heavy reliance" on its DSP network. *Id*. ¶ 2. Once an item is ordered on Amazon, it is picked, packaged, and labeled at an Amazon warehouse, called a fulfillment center. *Id*. ¶ 45. The item is then sent to a sortation center, where, depending on its destination zip code, it is either transported to an Amazon delivery center for

---

[1] This order refers to the parties' briefing by CM/ECF page number.

[2] This section assumes the truth of the allegations in Plaintiffs' complaint, for purposes of resolving the motion to dismiss.

delivery to its final destination by a DSP contractor, or to a third-party delivery facility, such as a USPS/UPS facility, for delivery to its final destination. *Id.*

Plaintiffs live in zip codes where, citing driver safety concerns, Amazon "stopped using DSP to deliver its Prime-eligible" products and now relies primarily on USPS/UPS delivery, which Plaintiffs allege is slower. *Id.* ¶ 3. As a result, in these areas, Plaintiffs allege that two-day delivery is "severely curtailed" and that Amazon cannot offer one-day delivery at all.[3] *See* Dkt. No. 16 ¶¶ 4, 46–47, 50–52.

Amazon has not publicly acknowledged any zip code exclusions from its DSP network, but Plaintiffs cite the complaint in a lawsuit filed against Amazon by the attorney general for the District of Columbia, which references these exclusions. Dkt. No. 16 ¶ 51. Plaintiffs cite statistics showing that their neighborhoods in the District of Columbia previously received Prime deliveries within two days of purchase at roughly the same or higher rates than other addresses city-wide. *Id.* ¶ 54. Plaintiffs allege that after changes to Amazon's DSP services in 2022, they now receive two-day delivery far less often. *Id.* Plaintiffs allege that if they had known that they would not continue to receive two-day shipping on most Prime-eligible items in Amazon's catalog, they "would have declined to enroll [in Prime], paid less for membership, and/or spent less time on Amazon's platform[.]" *Id.* ¶¶ 72, 81, 90, 99, 108, 117, 126, 135. The complaint does not allege that Plaintiffs *never* receive two-day shipping on their Amazon orders, but that for them fewer of their items are eligible for two-day shipping or arrive within two days. *See id.* ¶ 47.

Plaintiffs filed a consolidated class-action complaint in March 2025. *See* Dkt. Nos. 1, 15, 16. Plaintiffs bring a CPA claim based on unfair acts or practices, a CPA claim based on deceptive

---

[3] Plaintiffs acknowledge that some Underserved Zones are eligible for same-day deliveries, because these deliveries are often made by a fleet of "Amazon Flex" workers. Dkt. No. 16 ¶ 48. Plaintiffs maintain that even if same-day services are "available at times through Amazon Flex," Amazon nonetheless does not generally "provid[e] Regular Prime Orders in the Two-Day window" in Underserved Zones. *Id.*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

acts or practices, and a claim for injunctive relief, demanding that the Court enjoin Amazon "from advertising Prime membership as providing free, expedited shipping to consumers in the Underserved Zones and to enjoin Amazon from charging full price for Prime as if this service is provided in these areas, when it is not." Dkt. No. 16 ¶ 170.  The class is defined as all those enrolled in Prime while living in an Underserved Zone within the four years before December 5, 2024 (with a subclass for D.C. residents).  *Id.* ¶ 136.

Amazon filed a motion to dismiss for failure to state a CPA claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to identify unfair/deceptive acts or practices and have failed to allege facts supporting causation.  Dkt. No. 37.  The briefing is complete, the Court has heard oral argument, and the motion to dismiss is now ripe for resolution.

## II.    ANALYSIS

### A.    Legal Standards[4]

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (*id.*), nor do "allegations that are merely

---

[4] Although the Court is generally confined to reviewing the operative complaint in resolving a motion to dismiss, Amazon requests that the Court take judicial notice of five documents available on its website.  Dkt. No. 38.  Plaintiffs do not object to the Court's taking judicial notice of three of the documents (Dkt. No. 42 at 1), and Amazon's counsel confirmed at oral argument that the other two documents need not be considered in order to resolve its motion.  *See* Dkt. No. 57 at 6.  Thus, the Court grants the unopposed portion of Amazon's request (with respect to Dkt. No. 38-2, 38-4, 38-6) and denies the contested portion as moot.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If a claim sounds in fraud, it must also satisfy the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–05 (9th Cir. 2003). Rule 9(b) requires that parties "state with particularity the circumstances constituting fraud or mistake," including "'the who, what, when, where, and how' of the misconduct charged[.]" *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). To satisfy this standard, a plaintiff asserting fraud-based claims "must set forth what is false or misleading about [the defendant's] statement[s], and why [they are] false." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

> Rule 9(b) applies to [CPA] claims when they allege a specific intent to deceive or a "'unified fraudulent course of conduct.'" *REX – Real Est. Exch. Inc. v. Zillow Inc.*, No. C21-312, 2021 WL 3930694, at *8 (W.D. Wash. Sep. 2, 2021) (quoting *Vess*, 317 F.3d at 1105). On the other hand, if "the core of plaintiff's complaint is that defendant's conduct has a 'tendency' or the 'capacity to deceive' consumers," then Rule 9(b) does not apply. *Id*.

*In re Amazon Serv. Fee Litig.*, No. 2:22-cv-00743-TL, 2024 WL 3460939, at *5 (W.D. Wash. July 18, 2024).

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) (*citing Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).

**B.    Rule 9(b) Applies to Plaintiffs' Complaint.**

Although Plaintiffs contend that the heightened pleading standard of Rule 9(b) does not apply to their complaint, the Court disagrees. The complaint alleges that Amazon "deliberately,"

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 5

"knowing[ly]," and "purposely" engaged in unfair or deceptive conduct. *See, e.g.*, Dkt. No. 16 ¶¶ 3 ("Amazon has quietly and deliberately been de-listing ZIP codes and neighborhoods around the country from its DSP service."), 149 ("Amazon engaged in unfair acts or practices by marketing and selling its Prime memberships to consumers in a manner that purposely obscures the fact that Underserved Zones will not receive the full benefits of Prime membership."), 160 ("Amazon engaged and engages in deceptive acts or practices by marketing and selling its Prime service … in a manner that purposely misrepresents the nature of the product."). These types of allegations support an application of Rule 9(b), even though Plaintiffs did not use the word "fraud" in their complaint. *See, e.g.*, *Nicholas v. Amazon.com, Inc.*, 740 F. Supp. 3d 1099, 1104–05 (W.D. Wash. 2024) (finding that Rule 9(b) applied to allegations that Amazon "engaged in unfair or deceptive acts or practices … [to] intentionally and knowingly [mislead] Plaintiff").

**C.      The Complaint Fails to Identify an Unfair or Deceptive Practice With Particularity.**

Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" WASH. REV. CODE § 19.86.020. A CPA claim has five elements: "(1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation." *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 (Wash. 2017). If one element fails, the CPA claim as a whole fails. *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) ("All elements must be present; a finding that any element is missing is fatal to [a CPA] claim.").

If the parties' underlying conduct is undisputed, whether a certain act or practice is "unfair or deceptive" may be decided as a matter of law. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 647–49 (Wash. 2024). The CPA does not define "unfair" or "deceptive," and in enacting the CPA, Washington's "legislature intended to provide sufficient flexibility to reach unfair or deceptive

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

conduct that inventively evades legislation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009). "Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) (quoting *Panag*, 204 P.3d at 895).

Washington's legislature explained that the purpose of the CPA "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." WASH. REV. CODE § 19.86.920. In furthering this purpose, courts are to "be guided by final decisions of the federal courts and final orders of the federal trade commission" when determining whether an act or practice "restrains or monopolizes trade or commerce or may substantially lessen competition[.]" *Id.*

1. *Plaintiffs Have Failed to Allege an Unfair Act or Practice With Particularity.*

Plaintiffs seek to show that Amazon's delivery practices are unfair under the "substantial injury" test. Dkt. No. 41 at 13–14. To satisfy this test, a consumer injury (1) "must be substantial", (2) "must not be outweighed by any countervailing benefits to consumers or competition that the practice produces", and (3) "must be an injury that consumers themselves could not reasonably have avoided." *Greenberg*, 553 P.3d at 639. Plaintiffs allege that their injury (namely Prime subscription fees) was substantial, there is no countervailing benefit to consumers if certain zip codes cannot access two-day delivery, and Plaintiffs could not avoid the exclusion without shipping their items to a different address. Dkt. No. 41 at 13.

Amazon argues that Plaintiffs cannot satisfy these elements because (1) Plaintiffs have not been "injured" because the complaint does not identify with particularity Amazon's promise to provide two-day delivery at a particular frequency, (2) any unfairness of a zip code exclusion is

outweighed by the benefit of promoting driver safety, and (3) Plaintiffs could have avoided any "injury" by simply reading the Prime Terms more closely and then discontinuing their subscription if they were unsatisfied. Dkt. No. 44 at 12–13.

The Court finds Amazon's first argument particularly persuasive. Plaintiffs have failed to identify where or when Amazon promises or suggests that Prime membership entitles a subscriber to two-day delivery at a particular frequency, and this failure is fatal to their CPA unfairness claim. The complaint alleges that Amazon "*purposely* obscures the fact that Underserved Zones will not receive the full benefits of Prime membership" (Dkt. No. 16 ¶ 149 (emphasis added)), but this allegation assumes that Prime members are entitled to two-day delivery at a particular frequency without citing facts that support such an assumption. Similarly, the complaint states that Amazon "advertises" two-day shipping (*id*. ¶ 152), but does not identify any advertisement that promises two-day shipping at a frequency higher than that received by Plaintiffs or that plausibly gave that impression to Plaintiffs. Instead, the advertisements and screenshots from Amazon's website quoted in the complaint promise "fast, free delivery" or two-day delivery on "millions of items" (*e.g.*, *id*. ¶¶ 32–35). Although the complaint alleges that Amazon unfairly failed "to provide the Two-Day delivery it advertises in the Underserved Zones" (*id*. ¶ 150), Plaintiffs' counsel acknowledged at oral argument (consistent with the complaint's allegations) that Plaintiffs did receive two-day delivery on *some* items and that no Amazon customer receives two-day delivery on *every* Prime-eligible item. *See* Dkt. No. 57 at 17–18; *see also* Dkt. No. 16 ¶ 151 (alleging that Plaintiffs receive "severely curtailed access" to two-day shipping).

Plaintiffs' allegations of unfairness are even less plausible when viewed in conjunction with the disclosures in Prime's Terms & Conditions, which notify subscribers that "Prime shipping benefits depend upon" multiple factors, including "the shipping address[,]" and that two-day, one-day, or same-day delivery is not available on all deliveries to all addresses in the contiguous United

States. *See* Dkt. No. 38-2 at 2–3, Dkt. No. 38-4. In the absence of any specific allegations to support Plaintiffs' expectation that they would receive two-day shipping on more items, and because this expectation is not consistent with Amazon's explicit disclosures in the Prime Terms & Conditions, Plaintiffs have not plausibly alleged that Amazon's delivery practices are unfair. *Haywood v. Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at *7 (W.D. Wash. July 18, 2023) (finding that Amazon's "exercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice").

To the extent that Plaintiffs allege that Amazon's delivery practices are "immoral, unethical, oppressive, or unscrupulous" because they disproportionately impact low-income communities (Dkt. No. 16 ¶ 151) or impact neighborhoods "predominately populated by people of color" (*id*. ¶ 56) these allegations fail to save Plaintiffs' CPA claim. It is true that "a violation of certain statutes, such as the [Washington Law Against Discrimination ("WLAD")], is a *per se* unfair or deceptive practice." *E.S. by and through R.S. v. Regence BlueShield*, C17-1609-RAJ, 2024 WL 1173805, at *6 (W.D. Wash. Mar. 19, 2024). But Plaintiffs do not bring a discrimination claim, nor do they allege in the complaint or argue in their briefing that a disproportionate impact to consumers on the basis of address or income level would violate the WLAD or any other statute. Rather, the complaint alleges that Plaintiffs' neighborhoods used to receive faster delivery service on a greater number of items than they do now. Dkt. No. 16 ¶¶ 54, 56. Without more, that Amazon may have removed certain zip codes from its DSP network is insufficient to establish the existence of a *per se* unfair practice under the WLAD, particularly under the heightened Rule 9(b) standard.

Accordingly, the Court agrees with Amazon that Plaintiffs' complaint fails to sufficiently allege an unfair act or practice.

2. *Plaintiffs Have Failed to Allege a Deceptive Act or Practice With Particularity.*

A plaintiff can satisfy the first element of a CPA claim by showing that the act or practice in question "had the capacity to deceive a substantial portion of the public." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (quoting *Panag*, 204 P.3d at 894). The "knowing failure to reveal something of material importance is 'deceptive' within the CPA." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 18 (Wash. 2007) (citation modified).

Plaintiffs allege that Amazon marketed and sold Prime memberships to Plaintiffs "in a manner that purposely misrepresents the nature of the product" because "Amazon repeatedly represents to consumers in the Underserved Zones that Prime comes with expedited delivery, but in reality … residents there will not receive their deliveries of Prime-eligible goods in the advertised window of One-Day or Two-Day shipping." Dkt. No. 16 ¶ 160.

Amazon contends that Plaintiffs have not "point[ed] to any promise that Two-Day Delivery and the alleged DSP network will be available—or equally available—in all areas." Dkt. No. 37 at 15. Amazon emphasizes that the Prime Terms notify subscribers that "Prime shipping benefits depend upon" multiple factors, including "the shipping address[,]" and that in other parts of the Prime Terms and/or Amazon's Help Pages, customers are notified that two-day, one-day or same-day delivery is not available on all deliveries to all addresses in the contiguous United States. *Id.* at 8–11. Thus, because Amazon disclosed that the availability of two-day shipping depends on the shipping address, Amazon argues that it is not deceptive for Amazon to act in accordance with the Prime Terms. *Id.* at 15.

Amazon also emphasizes that Plaintiffs do not allege that two-day shipping is *never* available at their addresses, but only that it is available less frequently than they expected it would be. Dkt. No. 37 at 17 n.5 (citing Dkt. No. 16 ¶¶ 67, 76–77, 85–86, 94–95, 103–04, 112–13, 121–

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 10

22, 130–31).  Amazon therefore disputes that Prime advertising highlighting two-day shipping is deceptive because Plaintiffs admit that they sometimes receive two-day shipping.  Dkt. No. 37 at 17.  As Amazon does not guarantee that a specific percentage of Prime-eligible deliveries will arrive with two-day, one-day, or same-day shipping—and explicitly discloses that shipping speed depends on shipping address (Dkt. No. 38-2 at 2)—Amazon contends that its conduct is therefore not deceptive.  Dkt. No. 37 at 20.  And because the Prime Terms & Conditions give Amazon "sole discretion" to change any term of Prime membership, even if Plaintiffs' addresses were not excluded from DSP deliveries when they originally enrolled but became excluded later on, Amazon contends that such a change would not be deceptive because it was adequately disclosed in the parties' contract.  *Id*. at 18 (referencing Dkt. No. 38-2 at 3).

Parties to a valid contract are bound by its terms even if they choose not to read the terms, and conduct conforming with a valid contract is generally not unfair or deceptive for purposes of a CPA claim.  *See, e.g.*, *Brotherson v. Prof. Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1285 (W.D. Wash. 2009) ("[A] party who accepts a written offer without reading it nonetheless *objectively* manifests his or her assent to its terms."); *Mickelson v. Chase Home Fin. LLC*, C11-1445MJP, 2012 WL 1301251, at *5 (W.D. Wash. Apr. 16, 2012) ("Only '[g]rossly unfair or unconscionable contracts' where the material terms were 'hidden in a maze of fine print' are properly found to be unfair or deceptive." (quoting *State v. Kaiser,* 254 P.3d 850, 860 (Wash. Ct. App. 2011))).

Plaintiffs do not dispute that Amazon's Terms & Conditions afford Amazon discretion to change Prime terms at any time, and that they disclose that shipping speed may depend on shipping address, but argue that Amazon's aggressive marketing of two-day delivery nonetheless creates the "net impression" that "Two-Day Delivery is available in urban areas like the ones where the consumers live."  Dkt. No. 41 at 18–19.  But again, as emphasized by Amazon, Plaintiffs'

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 11

complaint acknowledges that two-day delivery *is* available to some degree, even with the DSP exclusions in their neighborhoods as alleged in this action. *See, e.g.*, Dkt. No. 16 ¶ 60. Plaintiffs' failure to identify any act or practice of Amazon's that would be likely to mislead a reasonable consumer to expect a certain frequency of two-day delivery undermines the plausibility of a CPA claim for deceptive acts or practices. *See Panag*, 204 P.3d at 895 (explaining that "[d]eception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer" (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986))). Accordingly, Plaintiffs have failed to plausibly allege that Amazon's delivery practices are deceptive.

**D.      Plaintiffs Have Not Pleaded Facts to Establish Causation.**

To prove the causation element of a CPA claim, a "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard*, 170 P.3d at 22. Only injuries to "business or property" are compensable and satisfy the CPA's injury requirement. *Panag*, 204 P.3d at 899. Therefore, "damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Id.*

As an additional basis to dismiss Plaintiffs' claims, Amazon argues that Plaintiffs have not adequately pleaded causation, for two reasons: (1) at least some Plaintiffs continue to subscribe to Prime to this day, although they have been aware for years that they get slower delivery than others, and thus it cannot be the unfair or deceptive Prime advertising that has caused them to pay for a Prime membership[5]; and (2) Plaintiffs failed to allege that any of them viewed the Prime advertising that they contend is unfair or deceptive. Dkt. No. 37 at 21–23.

---

[5] This argument assumes that the injury is paying the Prime membership fee. If, as is also suggested in the complaint (*e.g.*, Dkt. No. 16 ¶¶ 59, 90), that Plaintiffs were injured via time wasted searching for Prime-eligible items that could be delivered in two days, the complaint does not allege facts suggesting that this lost time injured their business or property. Such an injury is not compensable under the CPA. *See Gragg v. Orange Cap Co.*, 942 F. Supp. 2d 1111,

The Court finds both arguments persuasive.  That at least some Plaintiffs have continued to renew their Prime memberships even after noticing slower delivery speeds—and in the case of one Plaintiff, even after joining this lawsuit (Dkt. No. 16 ¶ 111)—undercuts Plaintiffs' injury theory that if the slower delivery speeds had been disclosed, Plaintiffs would not have subscribed to Prime.  This conduct undermines Plaintiffs' suggestion at oral argument that although they paid for a Prime membership, they did not get what they paid for.  *See* Dkt. No. 57 at 25.

And second, the Court agrees with Amazon that, in order to satisfy Rule 9(b), Plaintiffs must specifically describe what statements Plaintiffs saw, when and where they saw them, and whether the allegedly unfair and deceptive statements were the reason they chose to subscribe to Prime.  Dkt. No. 44 at 15–16.  But the Complaint states generally that each of the named Plaintiffs "first purchased a Prime membership for access to Amazon's advertised Two-Day shipping speeds," but does not specify which advertisements the Plaintiffs saw, or if these advertisements induced them to subscribe to Prime.  Dkt. No. 16 ¶¶ 65, 75, 84, 93, 102, 111, 120, 129.  The Complaint provides examples of Amazon's Two-Day Delivery advertisements without connecting them to Plaintiffs.  *Id*. ¶¶ 28, 29, 32, 33.  Absent these particularized facts, the Plaintiffs have not adequately pleaded that Amazon's conduct is the but-for cause of their injury.

For these reasons, the Court finds that Plaintiffs' complaint fails to state a valid CPA claim.  Because its deficiencies may be cured via amendment, the Court will provide leave to amend.

---

1118–19 (W.D. Wash. 2013) (explaining that "personal" injuries such as invasion of privacy or inconvenience are not the "business or property" injuries recognized by the CPA).

Likewise, to the extent the complaint suggests that Amazon's unfair/deceptive practices caused Plaintiffs to pay more for Prime membership than they would otherwise have (*e.g.*, Dkt. No. 16 ¶ 90), Plaintiffs have not alleged that they had an option to pay a reduced price for Prime membership.  This causation theory therefore also fails.  *See* Dkt. No. 44 at 15 ("There is no way for Plaintiffs to pay less for Prime based on their slower delivery speeds because Amazon does not offer lower rates based on slower speeds.").

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 13

### III.    CONCLUSION

For these reasons, the Court GRANTS Defendant's motion to dismiss.  Plaintiffs may file an amended class-action complaint no later than April 6, 2026.

Dated this 6th day of March, 2026.

_____
Kymberly K. Evanson
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 14